UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL M. SIROIS and<br>ALICIA M. SIROIS | : | |
| | : | |
| Plaintiffs, | : | Case No. 3:16-cv-01172-MPS |
| | : | |
| v. | : | |
| | : | |
| USAA CASUALTY INSURANCE<br>COMPANY | : | November 11, 2016 |
| | : | |
| Defendant. | : | |

**DEFENDANT USAA CASUALTY INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant USAA Casualty Insurance Company

("USAA"), respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint

(ECF Doc. 23, "Complaint"), which alleges breach of contract (Count I) and violation of the

Connecticut Unfair Insurance Practices Act and Connecticut Unfair Trade Practices Act (Count

II).   Plaintiffs' complaint arises out of USAA's denial of insurance coverage for Plaintiffs'

allegedly defective concrete foundation.

USAA now moves to dismiss Count I, which alleges breach of contract, on the grounds

that the alleged damage is neither covered under the plain language of the USAA policy in effect

in April 2016, when Plaintiffs claimed they first learned of the existence of the loss they claim,

nor under any of the previous policies issued by USAA beginning with Plaintiffs' initial USAA

policy in 2010 (the "Policies").[1] (Complaint, ¶ 21) Plaintiffs allege in their Complaint that their

---

[1] Copies of all policies issued to Plaintiffs by USAA are attached to this Motion to Dismiss as Exhibit A.
"In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the

loss was covered under the policy's coverage for collapse. (Complaint, ¶ 24-25). The relevant policy language, however, defines collapse as "[a] *sudden falling or caving in*" or "a *sudden breaking apart or deformation* such that the building or part of a building is in *imminent peril* of falling or caving in *and* is *not fit for its intended use*." (Exhibit A, Form Homeowners 9R(02) Preferred Protection Plan (07-08) at 1 of 34, as amended by Form HO-ACPCT (07-12), at 1 of 3).[2]  Plaintiffs fail to plead facts that plausibly fall within the scope of this policy provision.

The Connecticut Supreme Court has recognized that the term "sudden," in the context of an insurance policy's exception to an exclusion for the "sudden and accidental" release of pollutants, means "temporally abrupt." *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 540 (2002).  Plaintiffs fail to allege any facts to support a claim that there was a "sudden falling or caving in" or any other temporally abrupt event.  Plaintiffs also fail to allege facts satisfying the second prong of the collapse definition – (1) that there has been a "sudden breaking apart or deformation," (2) such that the Property is in imminent peril of falling or caving in, *and* (3) such that the building or part of the building is not fit for its intended use.  To the contrary, Plaintiffs state only that the concrete is "no longer" functioning as designed or intended and that they expect the basement walls "*will* fall in" and the home "*will* fall into the basement" at some future point. (Complaint, ¶¶ 11, 12, 19 (emphasis added).) Under the plain terms of the Policies, there is no coverage for Plaintiffs' claimed loss.

---

complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013); see also *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 129 (D. Conn. 2007).  Plaintiffs attached to their Complaint a copy of their most recent USAA policy, which was in effect from June 30, 2016 through June 30, 2017.  (See Compl., Exhibit A). The policy attached to the Complaint "is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).  Plaintiffs also reference in their Complaint the policies issued during the preceding policy years.  (See Compl., ¶ 22).  Accordingly, the Court may properly consider all of the USAA Policies, attached hereto as Exhibit A.

[2] The collapse definition of the Policies in effect from June 30, 2010 through June 30, 2014 additionally stated that "[d]amage consisting solely of settling, cracking, shrinking, bulging or expansion is not covered by this additional insurance unless it is the direct result of 'collapse.'" (See Exhibit A, 2010- 2013 Policies, Form Homeowners 9R(02) Preferred Protection Plan (07-08) at 1 of 34).

In a case involving very similar policy language and similar allegations, Judge Underhill of this Court recently concluded that the plaintiff could not establish either the requisite "abrupt falling down or caving in" or that the structure could not be used for its intended purpose, and granted the defendant insurer's motion to dismiss for failure to state a claim. *Alexander v. General Ins. Co. of America, No. 3:16-cv-0059*, transcript (Ex. B hereto); order granting motion to dismiss (Ex. C hereto). The same result should be reached here.

If the Court dismisses Count I, it should also dismiss Count II, alleging violation of the Connecticut Unfair Insurance Practices Act ("CUIPA") and Connecticut Unfair Trade Practices Act ("CUTPA"). Where USAA's denial of coverage was correct and there was no breach of contract, there can be no violation of CUTPA or CUIPA. Alternatively, Count II should be dismissed because at a minimum, Judge Underhill's dismissal of a similar complaint demonstrates that USAA's denial of coverage was "fairly debatable," and thus USAA can have no liability under CUIPA and CUTPA.

## II.    RELEVANT BACKGROUND AND ALLEGATIONS

In Count I of the Complaint,[3] Plaintiffs allege that they own the property located at 47 Baxter Street in Tolland, Connecticut (the "Property"), built in 1985. (Compl., ¶¶ 1, 3). Plaintiffs allege that they have insured the Property with a homeowner's policy issued by USAA since they purchased the home in 2010. (Id., ¶¶ 3-4). Plaintiffs further allege that in April of 2016, they noticed that the basement walls of their home contained horizontal and vertical cracks. (Id., ¶ 6). Plaintiffs claim that they investigated and learned that the cracking was caused by a "chemical compound" found in basement walls built in the late 1980s and early 1990s with concrete "most likely" from the J.J. Mottes Concrete Company. (Id., ¶¶ 7-8).

---

[3] USAA was served with a Complaint on June 14, 2016. (ECF Doc. 1, ¶ 2). USAA timely removed the action to this Court on the basis of diversity of citizenship on July 13, 2016. (ECF Doc. 1). Plaintiffs filed their First Amended Complaint ("Complaint") on October 21, 2016 (ECF Doc. 23).

Plaintiffs claim that a chemical compound within the aggregate used in manufacturing the concrete caused oxidation and expansion, damaging the concrete. (Id., ¶¶ 9-10).

Plaintiffs assert that concrete, when "made with good and sufficient materials," is designed and expected to remain a solid homogenous mass and last hundreds of years. (Id., ¶¶ 15, 18). Plaintiffs claim that "[i]n the short term, the basement walls of the plaintiffs' home have *begun to exhibit* failure mechanisms such as bowing, bulging, jacking, shifting, and other instances of differential inward and upward motion," which they claim "suggest[s] that all or a portion of the basement walls have structurally failed." (Id., ¶¶ 13-14). Plaintiffs further assert that the basement walls "*will* fall in" at some indefinite point in the future due to the exterior pressure from surrounding soil, and then "the entire home *will* fall" at some future point. (Id., ¶ 11, 12 (emphasis added)). Plaintiffs further allege that the basement walls "no longer function as intended and thereby prevents [sic] the plaintiffs from occupying the home in the manner intended – as a structurally stable single family residence." (Id. ¶ 19.) But Plaintiffs do not allege that they no longer reside in their home.

Plaintiffs claim that they notified USAA of the condition of their basement walls on or about April 19, 2016. (Id., ¶ 21). USAA denied their claim for coverage by letter dated June 1, 2016. (Id., ¶ 23). Plaintiffs' sole basis for claiming coverage is that the conditions at the Property constitute a "collapse" under the terms of the Policy. (Id., ¶¶ 24-25).

In Count II of the Complaint, Plaintiffs purport to allege breach of CUTPA through a violation of CUIPA. The only section of CUIPA Plaintiffs claim USAA violated is Conn. Gen. Stat. § 38a-816(6)(F), which proscribes "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." (Complaint, ¶ 43). Plaintiffs allege, upon information and belief, that USAA participates in the Insurance

Services Office, Inc., ("ISO"). (Id., ¶ 32). Plaintiffs further allege that, through its participation in ISO, USAA "has knowledge" that other insurers in Connecticut have denied so-called "concrete decay claims" on a variety of grounds. (Id., ¶¶ 32-36). Plaintiffs further claim that USAA's denial of coverage in their case makes it part of "an industry wide practice of denying coverage for concrete decay claims," and that the "USAA Group" has denied other similar claims." (Id., ¶¶ 39, 42). This, Plaintiffs claim, is part of USAA's "general business practice." (Id., ¶ 42).

## III.   LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted when the complaint fails to contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted.); *accord Gross v. Rell*, 695 F.3d 211, 215 (2d Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that it is entitled to relief and the complaint is subject to dismissal. *Id.* at 679. Similarly, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Kim v. State Farm Fire & Cas. Co.*, 2015 U.S. Dist. LEXIS 147823, *6 (D. Conn. Oct. 30, 2015) (internal quotation marks omitted.).

The plausibility standard set forth in *Iqbal* and *Twombly* requires plaintiffs to offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," or

5

"naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, supra, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). A court considering a motion to dismiss "begins its analysis by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumptions of truth. . . .  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Next, the court must determine whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement of relief." *Hawkeye, LLC v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 32994, *2-3, 2011 WL 1216408 (D. Conn. Mar. 28, 2011) (citing *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010)) (citations omitted; internal quotation marks omitted.). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's factual allegations must "assert a cause of action with enough heft to show entitlement to relief." *Vizio, Inc. v. Klee*, No. 3:15-cv-00929, 2016 U.S. Dist. LEXIS 44761 at *10 (D. Conn. March 31, 2016).

## IV.    LAW & ARGUMENT

### A.    Count One Should be Dismissed Because it Fails to Allege a Plausible and Cognizable Claim for Breach of the Insurance Policy, as the Claimed Loss is Not Within the Policies' Grant of Coverage for "Collapse"

Deterioration caused by cracking, bulging, and expansion of basement walls, or by deterioration or rust or other corrosion, as alleged in Plaintiffs' Complaint, is not covered under the plain language of the USAA Policies.   Moreover, the Policies specifically exclude from coverage losses caused by faulty or defective materials used in construction. (Id. at 15-16, 18.) The Policies' Additional Coverage for Collapse is the only section of the Policies under which Plaintiffs claim coverage.   For a "collapse" to have occurred as defined by the Additional Coverage, there must be a "***sudden falling or caving in***," or a "***sudden*** breaking apart or deformation such that the building or part of a building is in ***imminent peril*** of falling or caving in and is ***not fit for its intended use***."   (Exhibit A, Form Homeowners 9R(02) Preferred

Protection Plan (07-08) at 1 of 34, as amended by Form HO-ACPCT (07-12), at 1 of 3). Plaintiffs' Complaint alleges "cracking" and "deterioration," caused by a "chemical compound" present in the concrete from the date that the property was constructed, which "began to oxidize (rust) and expand . . . ." (Complaint, ¶¶ 6-10, 20). It further alleges that the home "has begun to exhibit" bowing, bulging, jacking, and shifting. (Id., ¶ 13). Although Plaintiffs claim that they are purportedly prevented from occupying their home "as a structurally stable single family residence" (although they do not allege that they have moved out), the Complaint does not allege that the house or any part thereof has experienced a "sudden falling or caving in," or a "sudden breaking apart or deformation." Rather, the Complaint speculates that there "will" be a "falling in" of basement walls at some point in the future. (Complaint, ¶¶ 11-12, 19). There is no allegation that Plaintiffs' home is in "imminent peril of falling or caving in." Plaintiffs have failed to allege a cognizable claim for breach of contract. Accordingly, Count I should be dismissed, for reasons explained further below.

> **1.     Loss Caused by Cracking, Bulging or Expansion of Walls, or by Deterioration, Rust or Other Corrosion, Is Excluded Under the Policies.**

Under Section I, Losses We Do Not Cover, the USAA Policies provide:

1.     Unless otherwise stated in 3. below[4] we do not insure for damage consisting of or caused directly or indirectly by any of the following, regardless of:

  (i)     The cause of the excluded event or damage that; or

  (ii)    Other causes of the loss that; or

---

[4] Section 3 is not applicable to this case. Section 3 provides that "[i]f any item in 1. above directly causes a **"named peril(s)"** to occur, the resulting damage produced by the **"named peril(s)"** is covered unless otherwise excluded or excepted elsewhere in this policy." (Exhibit A, Form Homeowners 9R(02) Preferred Protection Plan (07-08) at 16 of 34). "Named peril(s)" is defined as "one or more of the perils listed under LOSSES WE COVER-PERSONAL PROPERTY PROTECTION." (Id. at 2 of 34). None of the named perils listed under that section of the policy are "resulting damage" in this case. (See Id. at 14-15 of 34).

    (iii)    Whether the event or damage occurs suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or

    (iv)    Whether other causes or events act concurrently or in any sequence with the excluded event to

produce the loss.

\* \* \*

f.     . . . deterioration;

. . .

h.    . . . rust, electrolysis or other corrosion;

. . .

k.    Settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

(See Exhibit A, Form Homeowners 9R(02) Preferred Protection Plan (07-08) at 15-16 of 34).

Plaintiffs' claimed loss is "pattern cracking" in the "basement walls" of the Property, caused by the expansion of aggregate within the concrete. (Complaint, ¶¶ 7-9). Plaintiffs further claim that the walls have begun to exhibit "failure mechanisms" which they characterize as "bowing, bulging, jacking, shifting," and other types of differential movement. (Id., ¶ 13). Such a claim falls squarely within the exclusion for "cracking . . bulging, or expansion of . . .walls." Accordingly, Plaintiffs' loss is not covered under the Policies, unless it is the direct result of a covered "collapse." See *Rapid Park Indus. v. Great Northern Ins. Co.*, 2010 U.S. Dist. LEXIS 115747, \*19-21 (S.D.N.Y. Oct. 1, 2010) (deterioration and sagging of concrete floor of parking garage fell within exclusion for "settling [and] cracking. . . of paved or concrete surfaces. . . ."); *Boston Co. Real Estate Counsel v. Home Ins. Co.*, 887 F. Supp. 369, 373 (D. Mass. 1995) (interpreting exclusion identical to those in USAA policies to preclude coverage for building settlement caused by improper site preparation); *Rhoden v. State Farm Fire & Cas. Co.*, 32 F. Supp. 2d 907, 913 (S.D. Miss. 1998) (cracking of concrete in foundation excluded,

8

applying identical exclusion as in this case); *Nida v. State Farm Fire & Casualty Co.*, 454 So. 2d 328, 335 (La. App. 3d Cir. 1984) (foundation damage caused by expansion and contraction of soil excluded from coverage under settlement exclusion).

Plaintiffs further allege that their claimed loss is caused by "deterioration" and "rust." (Complaint, ¶¶ 9-10.) Both of these are also excluded causes of loss, as quoted above. See, e.g. *Travelers Prop. Cas. Co. of Am. v. Marion T, LLC*, No. 1:07-cv-1384-WTL-DML, 2010 U.S. Dist. LEXIS 47574, at *21 (S.D. Ind. May 12, 2010) (damage to mechanical equipment due to rust and corrosion was excluded from coverage by rust and corrosion exclusion).

### 2. Loss Caused By Faulty or Defective Materials Used In Construction Is Not Covered Under The Policies.

In Section I, Losses We Do Not Cover, the USAA Policies issued to Plaintiffs provide:

2. We do not insure for loss caused by any of the following. However, any ensuing loss to property described in Dwelling Protection and Other Structures Protection not precluded by any other provision in this policy is covered.

* * *

c. **Faulty, negligent, inadequate or defective:**

* * *
(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) ***Materials used in*** repair, ***construction***, renovation or remodeling; or maintenance.

This limitation applies to loss or damage to any property on or off the **"residence premises".**

(See Exhibit A, Form Homeowners 9R(02) Preferred Protection Plan (07-08) at 18 of 34 (emphasis added)).

Plaintiffs' Complaint alleges "pattern cracking" and "deterioration," caused by a "chemical compound" present in the concrete from the date that the property was constructed.

(Complaint, ¶¶ 6-10).   Plaintiffs further allege that concrete, when "made with good and *sufficient materials*," is not susceptible to the type of damage alleged to be occurring at Plaintiffs' home.  (Id., ¶¶ 15-18).  These allegations fall squarely within the exclusion for loss caused by faulty, inadequate or defective construction materials.  Thus, Plaintiffs' loss is not covered under the USAA Policies, unless the Additional Coverage for Collapse applies.  *See Edmond v. Hartford Ins. Co.*, 2008 U.S. Dist. LEXIS 15825, *15-16, 2008 WL 616092 (D. Conn. Mar. 3, 2008) (Droney, J.) (evidence showed that damage to home was caused by faulty original construction, and therefore not covered under exclusion substantively identical to one at issue here); *Megna v. United Servs. Auto. Ass'n*, No. CV00439422,  2004 Conn. Super. LEXIS 954, *4-5 (Conn. Super. Ct. Apr. 13, 2004) (DeMayo, J.) (damage caused by malfunctioning boiler fell within scope of faulty design, specifications and workmanship exclusion); *Bell Power Sys. v. Hartford Fire Ins. Co.*, No. CV 92 0065538, 1995 Conn. Super. LEXIS 448, *14 (Conn. Super. Ct. Feb. 15, 1995) (Aurigemma, J.) (contractor's failure to seal inlet and outlet holes in oil tank that later leaked constituted a "deficiency in design, specifications or workmanship" within policy exclusion).

### 3.      The Additional Coverage for "Collapse" Does Not Apply.

The Complaint alleges that the Plaintiffs' claimed loss is covered as a "collapse" caused by "decay that is hidden from view," or "[u]se of defective materials or methods in construction, remodeling or renovation." (Compl, ¶¶ 24, 25). The Policies provide, in Section I, Losses We Do Not Cover, a general exclusion for "'collapse,' other than as provided in Additional Coverages, 'Collapse'". (See Exhibit A, Form Homeowners 9R(02) Preferred Protection Plan (07-08) at 18 of 34).  In the Additional Coverages section, the Policies provide coverage for "collapse" of "an entire building or any part of a building covered by this insurance" if the collapse is caused by certain named perils, including "[d]ecay that is hidden from view, meaning damage that is

10

unknown prior to collapse or that does not result from a failure to reasonably maintain the property," or "[u]se of defective materials or methods in construction, remodeling or renovation." (See Exhibit A, 2011-2016 Policies, Form Homeowners 9R(02) Preferred Protection Plan (07-08) at 10 of 34, as modified by Forms HO-CT (07-10), HO-CT (01-12), and HO-CT (02-14), at 1 of 8).[5] In the Policies' Definitions section, "collapse" is defined as follows:

   **5. "Collapse"** means:

   a. A *sudden falling or caving in*; or

   b. A *sudden* breaking apart or deformation such that the building or part of a building is in *imminent peril* of falling or caving in and is *not fit for its intended use*.

(Id., at 1 of 34, as amended by Form HO-ACPCT (07-12), at 1 of 3) (emphasis added).

   In *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. at 540, the Connecticut Supreme Court held that the term "sudden," in the context of an insurance policy, means "temporally abrupt," and that "a process that occurs slowly and incrementally over a relatively long time, no matter how unexpected or unintended the process" cannot be considered to be "sudden." *Id.* at 544.[6] Plaintiffs' Complaint alleges "deterioration," caused by a "chemical

---

[5] The 2010 Policy language differs slightly. It provides coverage for "collapse" of "an entire building or any part of a building covered by this insurance" if the collapse is caused by: "[u]se of defective material or methods in construction, remodeling or renovation if the 'collapse' occurs during the course of the construction, remodeling or renovation." (See Exhibit A, 2010 Policy, Form Homeowners 9R(02) Preferred Protection Plan (07-08) at 10 of 34). This policy language is similarly inapplicable, given that there has been no "collapse" (as defined by the Policies) of an entire building, and any alleged "collapse" certainly did not occur during the course of construction.

[6] In *Buell*, the court was asked to interpret the meaning and applicability of the "sudden and accidental" exception to the pollution exclusion in the defendant insurers' policies. *Id.* at 529. The plaintiff insured had sought coverage from the defendants for contamination discovered at its properties in 1990 caused by releases of pollutants that had occurred during and after 1966. *Id.* at 530. The plaintiff, on appeal, challenged the lower court's holding that "there exists no genuine issue of material fact that any of the discharges were, as required by the insurance policies, 'sudden.'" *Id.* at 535. The plaintiff insureds argued that the term "sudden" meant "unexpected," not necessarily quick and abrupt, and that if the pollutant releases over the years were unexpected and accidental, the policies should provide coverage. *Id.* at 536. The Connecticut Supreme Court disagreed, holding that the term "sudden" requires that the release "occurs quickly or happens abruptly." *Id.* The Court rejected the plaintiffs' argument that the term "sudden" was ambiguous because some dictionary definitions of the term "in certain circumstances, include a sense that the event being described occurred unexpectedly." *Id.* at 546. The Court noted

compound" present in the concrete from the date that the property was constructed. (Compl., ¶¶ 8-10). Although Plaintiffs include the conclusory allegation that they are purportedly prevented from "occupying the home in the manner intended – as a structurally stable single family residence" (Complaint, ¶ 19), they do not allege that they no longer reside in their home, and nowhere do Plaintiffs allege a sudden "falling," "caving in," or "breaking apart."

Recently, Judge Underhill of this Court, in *Alexander v. General Ins. Co. of America*, No. 3:16-cv-0059, granted a motion to dismiss a similar complaint, which alleged that deteriorating foundation concrete constituted a "collapse" with the scope of a homeowners' insurance policy. (Exhibits B, C).  Similar to Plaintiffs' Policies, the policy at issue in *Alexander* defined "collapse" as an "abrupt falling down or caving in."  The *Alexander* plaintiffs alleged that there were numerous cracks in their foundation walls, and that the foundation walls were bulging and had cracked, shifted, and broken apart. (Id., pp. 5, 15).

Judge Underhill soundly rejected the plaintiffs' argument that the term "caving in" was ambiguous, and held that absent an allegation that the home or part of the home had *actually and abruptly* fallen down or caved in, there could be no coverage under the policy's collapse coverage.  (Id., p. 23).  The court also rejected plaintiff's argument that "bulging" could be construed to constitute "caving in" by noting that "[i]f the bulge eventually falls in, caves in, it doesn't matter that the caving in used to be a bulge.  But you don't have a falling down of the wall; you have a bulging of the wall.  And until it falls down, you don't have an abrupt collapse." (Id., p. 11 – 12).  In so doing, the Court recognized that the plaintiffs' alleged damage, which consisted of bulging and cracking to the basement walls, fell within the exclusion from the

---

that "[t]he existence of more than one dictionary definition is not the sine qua non of ambiguity.  If it were, few words would be unambiguous." *Id.*  The Court held that "[w]e cannot reasonably call 'sudden' a process that occurs slowly and incrementally over a relatively long time, no matter how unexpected or unintended the process."  *Id.* at 544 (internal quotation omitted).

definition of collapse for cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion. (Id., p. 3, 14-15, 23). The court emphasized the importance of the "abrupt" language and the need for the alleged damage to have occurred in an abrupt manner, even if the damage was caused by a slow process. (Id., p. 13-14, 18). The court stressed this distinction by using the following example in order to disprove plaintiff's assertion that decay could not occur abruptly:

> THE COURT: So here we go. Let's use insect damage. There's termites in the house. No collapse. They're eating away; every day they're eating away. No collapse. They keep eating away. Finally, they eat enough that the beam fails.
>
> [PLAINTIFF'S COUNSEL]: Right.
>
> THE COURT: Now there's coverage. Now you have a collapse or falling in. The fact that it was caused by termites and it was a slow process doesn't mean you didn't have an abrupt collapse. You did, when the beam failed and there was literally a falling of the beam, a failure of the beam.
>
> [PLAINTIFF'S COUNSEL]: But what if when that beam becomes substantially compromised and it begins to shift and move --
>
> THE COURT: No coverage.
>
> [PLAINTIFF'S COUNSEL]: -- is that a caving in, though?
>
> THE COURT: No, it's not.
>
> * * *
>
> THE COURT: If an abrupt caving in has occurred that is something other than a bulging, sagging, bending, leaning, settling, shrinkage, cracking or expansion, you're in good shape. We don't have that allegation here.

(Id., pp. 13-14).

The USAA Policies require "[a] sudden falling or caving in," or "[a] sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use." (See Exhibit A, Form Homeowners 9R(02)

Preferred Protection Plan (07-08) at 1 of 34, as amended by Form HO-ACPCT (07-12), at 1 of 3). As discussed, under *Buell*, the term "sudden" is synonymous with "abrupt," the same term the Court construed in *Alexander*. Nothing in Plaintiffs' Complaint can plausibly be interpreted as an allegation of a "sudden falling or caving in" or a "sudden breaking apart or deformation . . . ," as the Policies require. Nor do Plaintiffs allege that their Property is in imminent peril of falling or caving in."[7]

To the contrary, Plaintiffs allege a very gradual, long term process of cracking and deterioration, which began when their house was built in 1985, results from a chemical compound that was included in the basement walls at the time they were built, and, based on what Plaintiffs have alleged, cracks were not noticed until April 2016, more than 30 years later. (Complaint, ¶¶ 3, 6-9, 13.) There can be no serious doubt that this three decade-long process cannot be "sudden" as defined by the Connecticut Supreme Court in *Buell*.

In *Ass'n of Unit Owners of Nestani v. State Farm Fire & Cas. Co.*, 670 F. Supp. 2d 1156 (D. Or. 2009), *aff'd sub nom. Ass'n of Unit Owners of Nestani-A Grecian Villa v. State Farm Fire & Cas. Ins. Co.*, 434 F. App'x 579 (9th Cir. 2011), the Oregon federal district court interpreted the term "sudden" consistent with the *Buell* court in a case involving a claimed collapse. Interpreting policy language similar to USAA's,[8] the court held that a claim for coverage as a result of water damage and decay occurring over time was not within the policy's additional coverage for collapse, which provided in relevant part: "We insure only for direct physical loss to covered property involving the *sudden*, entire collapse of a building or any part

---

[7] While Plaintiffs allege that their basement walls have "begun to exhibit failure mechanisms" such as bowing, bulging, jacking, and shifting of their basement walls "in the short term" (Complaint, ¶ 13), these conditions do not fall within the definition of "collapse," and fall within the Policies' exclusion for settling, cracking, bulging, and expansion of walls.

[8] The policy in *Nestani* provided: "We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building." *Id.* at 1161. As in this case, the collapse had to be caused by certain specified perils, including "hidden decay," the peril that plaintiffs claim triggered the collapse.

of a building." *Id.* at 1161 (emphasis added). Like the Supreme Court in *Buell*, the court found

that the term "sudden" "has a temporal element in the context of a collapse endorsement and

necessarily means 'abrupt,' thus precluding a gradual 'collapse' such as that alleged by the

plaintiff." *Id.* at 1163. The court held:

> Given the context of the Policy, I find persuasive defendant's
> argument that "sudden" in the collapse coverage clause has a temporal
> element. I thus interpret "sudden" in this context to mean "marked by
> or manifesting abruptness or haste" or "made or brought about in a
> short time." Merriam-Webster's Collegiate Dictionary 1248 (11th ed.
> 2004). Accordingly, conditions that gradually lead to collapse are
> excluded under the Policy, and only "sudden" collapses are covered
> under the extension of coverage for collapse. Given the undisputed
> facts that any "collapse" at Nestani resulted from water damage and
> decay "occurring over a period of time," this "collapse" was not
> "sudden" under the terms of the Policy. Plaintiff's claimed loss
> therefore does not meet the terms of the extension of coverage for
> collapse.

*Id.; see also Amitie One Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co.*, 2010 U.S. Dist.

LEXIS 129077, *23-24, 2010 WL 5088231 (M.D. Pa. Aug. 31, 2010) (policy that covered

"sudden" sinkhole collapse did not apply where plaintiff's own consultant stated that damage

was progressive and connected to long-term defects).

A Connecticut state court interpreting a collapse definition similar to USAA's also found

the policy language to be unambiguous. In *Sports Domain, LLC v. Max Specialty Ins. Co.*,

Superior Court, Docket No. CV-09-5025291-S, 2011 Conn. Super. LEXIS 3187, 2011 WL

6989864 (Conn. Super. Ct. Dec. 19, 2011), an indoor air-supported canvas dome used as a sports

arena collapsed when the roof canvas split open from end to end and the structure fell to the

ground. *Id.,* 2011 Conn. Super. LEXIS 3187, at *4. In the days prior to that event, the dome had

sagged considerably under the weight of snow. The dispositive issue was whether the loss was

covered as a "collapse" under the insurance policy in force when the sagging occurred, which

defined "collapse" as "an abrupt falling down or caving in of a building or any part of a

15

building," or under a policy, issued by a different insurer, in force when the structure later fell to the ground. The court held the definition of "collapse" in the policy covering the earlier time period was clear and unambiguous, and that there was no collapse on the date the sagging occurred:

> Collapse is defined in the policy as an *abrupt* falling down. (Emphasis added.) The fact that the building had sagged on December 20 does not establish that a collapse occurred on that date. The policy provides and the court finds that a building in the state that the dome was in on December 20 is not in a state of collapse.

*Id.* at *7. *See also Residential Mgmt. (N.Y.) Inc. v. Fed. Ins. Co.*, 884 F. Supp. 2d 3, 9 (E.D.N.Y. 2012) (policy requiring "abrupt falling down or caving in" did not provide coverage for alleged collapse of steel supports to rooftop water tank, because water tank remained standing and did not "abruptly fall down or cave in at any point." ); *Rector St. Food Enters., Ltd v. Fire & Cas. Ins. Co. of Conn.*, 35 A.D.3d 177, 827 N.Y.S.2d 18 (N.Y. App. Div. 2006) (building that had two to three inch wide cracks in its façade and was sinking, out of plumb, and leaning, had not suffered an "abrupt falling down or caving in" as required under unambiguous policy definition of collapse).

Regarding the additional requirement in the collapse coverage that the building or part of a building be in "imminent peril of falling or caving in," the term "imminent," applied to a claimed collapse, has been defined as "likely to happen without delay."[9] *Ocean Winds Council of*

---

9 Although Plaintiffs allege that the "basement walls suffered a substantial impairment to their structural integrity," Plaintiffs do not allege a "sudden falling or caving in," or a "sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use," as required by the Policies. (Compl., ¶ 20). *Beach v. Middlesex Mut. Assurance Co.*, 205 Conn. 246, 532 A.2d 1297 (1987), is of no relevance to this motion. In the absence of a policy definition of "collapse," the Connecticut Supreme Court found that the term "collapse" was "sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building." *Id.* at 250-52. The *Beach* court held that "[i]f the [insurer] wished to rely on a single facial meaning of the term 'collapse' as used in its policy, it had the opportunity expressly to define the term to provide for the limited usage it now claims to have intended." *Id.* at 251. In this case, the USAA Policies do just what the *Beach* court invited: the Policies define the term "collapse" as "[a] sudden falling or caving in" or "a sudden breaking apart or deformation such that the building or part of a building is in imminent

16

*Co-Owners, Inc. v. Auto-Owner Ins. Co.*, 350 S.C. 268, 565 S.E.2d 306, 308 (S.C. 2002); *see also Whispering Creek Condominium Owner Ass'n v. Alaska Nat'l Ins. Co.*, 774 P.2d 176, 180, 1989 (Alaska 1989) ("imminent collapse" where building "dangerous and in immediate danger of complete collapse"); *Doheny West Homeowners' Ass'n v. Am. Guar. & Liab. Ins. Co.*, 60 Cal. App. 4th 400, 406, 70 Cal. Rptr. 2d 260, 264 ("imminent" in context of collapse means "likely to happen without delay; impending, threatening," and citing cases that "implicitly or explicitly require that collapse be imminent and inevitable, or all but inevitable"). In this case, Plaintiffs have not alleged that any portion of the Property is in "imminent peril of falling or caving in."

**B.      Because Count I Should be Dismissed for Failing to Allege a Plausible and Cognizable Claim for Breach of the Insurance Policy, the CUTPA/CUIPA Claim (Count II) Should Also be Dismissed.**

As Judge Underhill concluded in *Alexander*, "[b]ecause the coverage claim fails . . . the statutory claims, CUTPA/CUIPA, also fail" because "[q]uite simply, without coverage there can't be bad faith or a violation of either of those consumer statutes." (Exhibit B, *Alexander* tr. at 24). The Connecticut Supreme Court has recognized that when breach of contract claims fail as a matter of law, CUTPA/CUIPA claims premised on allegedly improper denials of coverage must fail as well. *See, e.g., Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 378 (2008) (where insurer's interpretation of policy was correct, there could be no CUTPA/CUIPA violation); *see also Rancourt v. Allstate Ins. Co.*, 2008 Conn. Super. LEXIS 3024, *7 (Conn. Super. Ct. December 1, 2008) ("[S]ince the defendant [insurer] had no obligation to pay under the policy, the defendant could not have violated CUIPA or CUTPA."); *Wright v. State Farm Mutual Automobile Ins. Co.*, 1997 Conn. Super. LEXIS 3122, *10 (Conn. Super. Ct. Nov. 18, 1997)

---

peril of falling or caving in and is not fit for its intended use." The *Beach* "substantial impairment of structural integrity" formulation is therefore irrelevant, as the issue before this Court is *not* how the term "collapse" should be interpreted in the absence of a definition, but rather the application of the Policies' definition to the allegations of the present Complaint.

("Having no obligation to pay under the policy, State Farm could not have violated CUIPA or CUTPA."). Here, Plaintiffs' CUTPA/CUIPA claim in Count II is premised on USAA's alleged wrongful denial of the Plaintiffs' claim. Specifically, Plaintiffs allege that USAA (1) denied coverage on "untenable grounds," failing to pay a claim for which its liability was allegedly "reasonably clear"; (2) provided a "false and misleading reason for the denial of coverage" that was contrary to the Policies; and (3) affiliates of USAA improperly denied other similar claims. (Compl., ¶¶ 38-42). Given that the Policies do not provide coverage for Plaintiffs' claimed loss, the CUTPA/CUIPA claim fails as a matter of law. Accordingly, should the Court grant USAA's Motion to Dismiss the breach of contract claim in Count I, it should also dismiss Count II.

### C.   Alternatively, even if the Court does not dismiss Count I, it should dismiss Count II, as Plaintiffs fail to state a cause of action for violation of CUTPA/CUIPA.

Under Connecticut law, a CUTPA claim against an insurer must be premised on a specific violation of CUIPA. *See State v. Acordia, Inc.*, 310 Conn. 1, 37 (2013) ("unless an insurance related practice violates CUIPA or, arguably, some other statute regulating a specific type of insurance related conduct, it cannot be found to violate any public policy and, therefore, it cannot be found to violate CUTPA"). Plaintiffs claim that USAA violated one subsection of CUIPA, Conn. Gen. Stat. § 38a-816(6)(F), which proscribes "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." (Complaint, ¶ 43). An insurer that has a good faith basis for denying coverage cannot be in violation of § 38a-816(6)(F), which requires, as a condition, that "liability has become reasonably clear." This requirement "means that the existence of liability has to be substantially certain." *Tucker v. Am. Int'l Group, Inc.*, 2015 U.S. Dist. LEXIS 9874, *90 n.48 (D. Conn. Jan. 28, 2015) (quoting 2 Insurance Claims and Disputes § 9:35 (6th ed. updated March 2014)).4)) (emphasis added). At a minimum, where Judge Underhill of this Court granted a

18

motion to dismiss an essentially identical lawsuit involving very similar policy language, even if this Court were to disagree with Judge Underhill, it cannot be said that USAA's liability was "reasonably clear." Where USAA's coverage position was, at a minimum, fairly debatable, there can be no violation of Conn. Gen. Stat. § 38a-816(6)(F). *See, e.g., Chi. Title Ins. Co. v. Bristol Heights Ass'n, LLC*, 2009 Conn. Super. LEXIS 3508, \*23 (Conn. Super. Ct. Dec. 30, 2009) (granting summary judgment in favor of insurer on CUTPA/CUIPA claim because "liability was anything but 'reasonably clear'"); *Bauco v. Hartford Fire Ins. Co.*, 2004 Conn. Super. LEXIS 564, \*43 (Conn. Super. Ct. Mar. 3, 2004) (same result).

## V.    CONCLUSION

This case is on all fours with Judge Underhill's decision granting a motion to dismiss in *Alexander*. Plaintiffs' Complaint alleges "pattern cracking" and "deterioration" of their home's basement walls caused by mineral properties in the foundation concrete that were  present from the time the concrete was poured and expanded gradually over 30 years thereafter. Plaintiffs do not allege a "sudden falling or caving in" or a "sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in," as required to constitute a "collapse" under the Policies. The conditions described by Plaintiffs – gradual cracking of concrete walls over several decades, caused by defective materials in the concrete – do not fall within the collapse coverage, and are specifically excluded by the Policies.  For these reasons, USAA's motion to dismiss Count I, alleging a breach of contract claim, should be granted.  If the Court grants USAA's motion to dismiss Count I, then Count II, alleging a violation of CUTPA/CUIPA, must similarly be dismissed, as it cannot be maintained in the absence of a breach of contract claim.

Even if the Court were to disagree with Judge Underhill and decline to dismiss Count I, it cannot be said that USAA's liability was "reasonably clear" where a judge of this Court dismissed an essentially-identical lawsuit involving very similar policy language. This case involves nothing more than a dispute over the terms of the coverage afforded under a policy of insurance, and Plaintiffs' attempts to reconfigure this coverage dispute as a violation of CUTPA and CUIPA should be rejected.  Plaintiffs have failed to raise plausible allegations that USAA has violated Conn. Gen. Stat. § 38a-816(6)(F), proscribing failure to exercise good faith in settling claims where "liability is reasonably clear."

For the foregoing reasons, Plaintiffs have failed to state a claim upon which relief can be granted, and Plaintiffs' First Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

<div style="margin-left: 40%;">

DEFENDANT
USAA CASUALTY INSURANCE
COMPANY

By /s/ Jenna L. Veronneau
    Raymond T. DeMeo (ct02189)
    Jenna L. Veronneau (ct30076)
    Robinson & Cole LLP
    280 Trumbull Street
    Hartford, CT 06103-3597
    E-mail:  jveronneau@rc.com
    Tel. No.: (860) 275-8200
    Fax No.: (860) 275-8299

</div>

## **CERTIFICATION**

I hereby certify that on this date, November 11, 2016, a copy of the foregoing was filed electronically.  Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Jenna L. Veronneau
Jenna L. Veronneau