UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

```
*************************************************
                                       *
MICHAEL L. SIROIS and                  *
ALICIA M. SIROIS,                      *
                   Plaintiffs          *
                                       *   Civil Action No.
v.                                     *   3:16-cv-01172 (MPS)
                                       *
USAA CASUALTY INSURANCE COMPANY,       *   December 2, 2016
                   Defendant           *
                                       *
*************************************************
```

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS

NOW COME the plaintiffs, Michael L. Sirois and Alicia M. Sirois (hereinafter collectively referred to as "the Siroises"), and submit the following Memorandum of Law in Opposition to the defendant, USAA Casualty Insurance Company's (hereinafter "USAA") Motion to Dismiss.

### INTRODUCTION

This controversy concerns USAA's failure to indemnify the Siroises for damage to their home covered by one or more policies of homeowner's insurance issued by USAA and purchased by the Siroises. The Siroises purchased the home at 47 Baxter Street, Tolland, Connecticut in June of 2010. First Amended Complaint, Document No. 23, ¶ 4. The home was built in 1985. *Id.* In April of 2016, the Siroises noticed a series of horizontal and vertical cracks throughout most of the basement walls of their home. *Id.* at ¶ 6. The Siroises immediately undertook an investigation of the condition, its cause, and the methods of repair by consulting

ORAL ARGUMENT REQUESTED

with various contractors and other professionals.  *Id.* at ¶ 7.  Upon further inquiry, the Siroises discovered that the form of "pattern cracking" found in their basement walls was caused by the presence of a chemical compound found in certain basement walls constructed with concrete most likely mixed by the J.J. Mottes Company between the late 1980s and early 1990s.  *Id.* at ¶ 8-9.  This particular chemical compound is found in the aggregate of the concrete and will – with its mixture with the water, sand, and cement necessary to form the concrete – begin to oxidize and expand, breaking the bonds of the concrete internally and reducing the concrete to rubble.  *Id.* at ¶ 8-9.  There is no known scientific or engineering method or process effective in reversing the deterioration.  *Id.* at ¶ 10.  In the long term, it is only a matter of time until the basement walls of the Siroises' home fall in, which will in turn cause the entire house to fall into the basement.  *Id.* at ¶ 11-12.

In the short term, the basement walls of the Siroises home have already begun to exhibit failure mechanisms such as bowing, bulging, jacking, shifting, and other instances of differential inward and upward motion.  *Id.* at ¶ 13.  These failure mechanisms suggest that all or a portion of the basement walls have structurally failed.  *Id.* at ¶ 14.  These failure mechanisms further suggest that the concrete basement walls are not serving their intended function of acting as a solid homogenous mass fit for supporting the wooden structure of a single family home for its useful life.  *Id.* at ¶ 15.  Rather, the walls are fracturing and expanding a manner completely unexpected of concrete made with good and sufficient materials.  *Id.* at ¶ 16-19.  As a result of the condition present in the basement walls of the Siroises' home that home is incapable of being occupied in the manner it was intended – as a structurally stable single family residence.  *Id.* at ¶ 19.

Having observed these conditions and having learned of the substantial impairment to the structural integrity of their home, the Siroises made a timely claim for coverage to USAA on April 19, 2016.  *Id.* at ¶ 17-18.  USAA denied the Siroises' claim by way of letter dated June 1, 2016 claiming that the homeowner's policies it issued do not afford coverage for damage caused by the condition affecting the Siroises' basement walls.  *Id.* at ¶ 23.   However, the insurance policies at issue contain clear language providing coverage for "direct physical loss to covered property involving 'collapse' of a building or any part of a building only when the 'collapse' was caused by one or more of the following:…(b) Decay that is hidden from view;… or (f) Use of defective materials or methods in construction, remodeling or renovation."  Exhibit A, Form HO-9R(02) (07-08), para. 8, page 10 of 34, as amended by Form HO-CT (02-14), page 1 of 8.[1]  The Siroises have alleged that the condition of their basement walls constitutes a collapse as defined by the homeowner's policies issued by USAA.  First Amended Complaint, Document No. 23, ¶ 25.

Due to USAA's denial of coverage based upon grounds contrary to the express provisions of the homeowner's policy, the Siroises commenced suit in Tolland Superior Court on June 13, 2016 claiming breach of contract and unfair and deceptive trade practices in violation of the Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade Practices Act ("CUTPA").  USAA removed this matter to the Federal District Court on July 13, 2016, invoking diversity jurisdiction.   On October 21, 2016, the Siroises filed their First

---

[1] The Siroises are mindful that USAA has appended to its motion certified copies of all policies issued to them.  The Siroises have attached to this opposition a copy of the most recent policy, for ease of reference.  The policy appended to the opposition contains the language relied upon by USAA in its motion.  Furthermore, it appears that the policy appended to the First Amended Complaint contained an incorrect policy form.  While no discovery has been conducted with respect to the policies issued by the Siroises, they have no reason to believe that the policies offered by USAA are inaccurate.

Amended Complaint.  USAA's Motion to Dismiss followed on November 11, 2016.

## **ARGUMENT**

USAA seeks to dismiss the Siroises' First Amended Complaint in its entirety.  In doing so, USAA misapplies both the standards for insurance policy interpretation and the standards for pleading.  First, the terms of the policy appear to provide coverage for the collapse of a building structure or the collapse of part of a building structure, provided that it is caused by an enumerated peril.  *Id.*  That said, the Siroises submit that the allegations of the complaint suggest that a covered collapse have occurred and that the policy language asserted by USAA to exclude their claim is ambiguous.  These ambiguities must be construed against USAA and in favor of coverage.  Second, the Siroises suggest that they have adequately pleaded that USAA was acting pursuant to its general business practice in failing to settle their claim in good faith and, therefore, they have stated a claim for unfair and deceptive practices in violation of CUIPA through the private right of action granted by CUTPA.

## I.     **Standard for Ruling on a Motion to Dismiss.**

The Federal Rules require only that a plaintiff plead "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) *citing Conley v. Gibson,* 355 U.S. 41, 47 (1957).  In passing upon a motion to dismiss the Court "must accept all allegations in the complaint as true and draw all inferences in the light most favorable to the non-moving party[]."  *In re NYSE Specialists Sec. Litig.,* 503 F.3d. 89, 95 (2d Cir. 2007).  While a complaint must contain enough factual content to state a claim that is plausible on its face, "[a] claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). This plausibility standard is not a "probability requirement." *Id.*

While *Twombly* marked a departure from prior pleading standards it did not apply a "heightened pleading standard." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 569 n. 14 (2007). In particular, a plaintiff may satisfy the plausibility requirement with allegations made "upon information and belief" particularly where facts are within the possession and control of the defendant. *Artisa Records LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010). A plaintiff does not need to plead with facts with exquisite detail, but must at least provide enough facts to raise a reasonable expectation that discovery will reveal evidence of the misconduct complained of. *Van Dorsten v. Provident Life and Accident Ins. Co.,* 554 F.Supp.2d 285, 289 (D. Conn. 2008). Though the Supreme Court has recently advanced a more narrow reading of the pleading rules, it still adheres to the proposition that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007).

## II.   <u>Standards for Insurance Policy Interpretation.</u>

The standards for construing the terms of an insurance policy in Connecticut are clear. Construction of an insurance policy involves a determination of the parties' intent as expressed by the policy language. *Conn. Ins. Guar. Ass'n v. Fontaine,* 278 Conn. 779, 784 (2006). However, when performing this analysis, the court must construe the policy terms "as laymen would understand them and not according to the interpretation of sophisticated underwriters." *Vermont Mut. Ins. Co. v. Walukiewicz,* 290 Conn. 582, 592 (2009). In particular, "the

policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." *Id.*  Where policy terms are unambiguous those terms are accorded their natural and ordinary meaning.  *Jacaruso v. Lebski,* 118 Conn. App. 216, 233 (2009). However, where a term is susceptible to more than one reading, the term is construed against the insurance company as they drafted the policy terms.  *New London County Mut. Ins. Co. v. Zachem,* 145 Conn. App. 160, 166 (2013).  Ambiguous insurance policy terms are not only construed against the insurance company, they are construed in favor of coverage.  *Middlesex Ins. Co. v. Mara,* 699 F.Supp.2d 439, 446-447 (D. Conn. 2010); *Beach v. Middlesex Mut. Ass. Co.,* 205 Conn. 246, 249-250 (1987).

**III.**      **The Siroises have Properly Pleaded a Claim for Breach of Contract.**

The Siroises suggest that they have properly pleaded a claim for breach of contract for USAA's failure to cover their claim for damage to the basement walls of their home under the terms of one or more of the homeowner's insurance policies issued to them by USAA.  The homeowner's insurance policies issued by USAA clearly provide coverage for the collapse of a building or any part of a building, if that collapse is caused by an enumerated peril.  Exhibit A, Form HO-9R(02) (07-08), para. 8, page 10 of 34, as amended by Form HO-ACPCT (07-12), page 1 of 3, and by Form HO-CT (02-14), page 1 of 8.  Included among the enumerated perils within the collapse coverage are decay that is hidden from view and use of defective materials and methods in the course of construction.  *Id.*  The Siroises' First Amended Complaint alleges that their basement walls have collapsed, as the term is defined by the policy, and that the collapse was caused by one (1) of two (2) enumerated perils; decay that is hidden from view or defective materials used in the construction of their home.  First Amended Complaint, Document

No. 23, ¶ 8-10, 13-20, 25.  USAA contends that the conditions alleged in the Siroises complaint do not satisfy the policy definition of the term "collapse."

Unlike many homeowner's insurance policies issued in the State of Connecticut that leave the term "collapse" undefined – in which instance a collapse occurs where there has been a substantial impairment to the structural integrity of the home – USAA has made some effort to define what events constitute a coverage "collapse."  *See Beach v. Middlesex Mut. Ass. Co.*, 205 Conn. 246, 252 (1987).  The most recent definition contained in USAA's homeowner's policies defines the term "collapse" as follows:

> "a. a sudden falling or caving in;
> b. a sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use."
> Exhibit A, Form HO-9R(02) (07-08), para. 8, page 10 of 34, as amended by Form HO-ACPCT (07-12), page 1 of 3.

USAA suggests that the conditions described in the Siroises' First Amended Complaint do not constitute a sudden falling or caving in, or sudden breaking apart or deformation.  The Siroises' respectfully disagree.  Rather, the Siroises suggest that the structural conditions that they have alleged constitute an unexpected caving in that is sufficient to trigger coverage under the definition of collapse asserted by USAA.  Furthermore, to the extent that the definition of collapse requires that such an event be abrupt or have some temporal element, the term "sudden" is ambiguous in the context of the collapse coverage provided by the USAA policies and must be construed in favor of coverage, particularly with respect to the enumerated collapse peril of decay that is hidden from view.

**A.     The First Amended Complaint Alleges Conditions Suggesting a "Caving In" of the Basement Walls.**

The first prong of the collapse definition proffered by USAA requires a "falling *or* caving-in."  Exhibit A, Form HO-9R(02) (07-08), para. 8, page 10 of 34, as amended by Form HO-ACPCT (07-12), page 1 of 3.  (emphasis added).  USAA asserts that it is clear that the allegations do not demonstrate a falling or caving in of the Siroises' home.  As the Siroises' home is still standing, it is undeniable that there has been no "falling" of the building.  However, that is only one event meeting the definition supplied by the USAA policies.  The separation of the term "falling" and "caving in" with the word "or" suggests that the terms are separate and distinct, and must be considered separately as a trigger for coverage.  *Gulino v. Economy Fire and Cas. Co.,* 971 N.E.2d 522, 527-528 (Ill.App.Ct. 2012)(holding due to the use of the disjunctive term "or" that a "caving in" "connotes the undermining of a structure that can be something less than a complete falling down."); *see also Lexington Ins. Co. v. Lexington Healthcare Group,* 311 Conn. 29, 56-57 (2014)(reiterating the accepted canon of construction requiring that insurance policies should not be read in a manner rendering any part superfluous).  The Siroises suggest that though their allegations do not suggest that the home or part of the home has completely fallen down, they do properly allege an impairment to the structure, less than a falling, but constituting a "caving in" for purposes of the USAA definition of "collapse."

The term "cave-in" is defined to mean to "yield" or to "submit to pressure."  Oxford American Dictionary and Thesaurus (2003).  The Siroises have alleged that the walls of their home have begun to exhibit failure mechanisms, such as, bulging, bowing, jacking, shifting, and other instances of differential inward and upward motion.  First Amended Complaint, Document No. 23, ¶ 13-14. These failure mechanisms suggest that the walls have submitted to the lateral

pressure of the soil surrounding the home and have structurally failed.  USAA's arguments do not ascribe any meaning to the term "caving in," however they seem to assume that the terms "falling" and "caving in" both require the complete crumbling to the ground of a building or part of a building.  Respectfully, USAA's construction would do nothing but render the term "caving in" superfluous, and, therefore, this construction cannot be accepted.  *Lexington Ins. Co. v. Lexington Healthcare Group,* 311 Conn. 29, 56-57 (2014).  As a result of the dictionary definition offered and the cannon of construction preventing interpretations of policy language that would render a term superfluous, the Siroises submit that the term "caving in" is reasonably susceptible to more than one meaning.  Therefore, the term "caving in" is ambiguous and must be construed against the insurer and in favor of coverage.  Construing the term in favor of coverage, the Siroises suggest that the conditions alleged in the First Amended Complaint, viewed in their favor, properly allege that a caving in has occurred.

To contradict the Siroises proposed construction of the phrase "falling or caving in," USAA points to the case of *Alexander v. General Ins. Co.,* which interpreted a different policy definition of the term "collapse."  While USAA contends that its policy definition of "collapse" is similar to that found in *Alexander*, the Siroises suggest that it is materially different.  The policy definition of the term "collapse" at issue in *Alexander* provides:

> "a. With respect to this additional coverage:
> 1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.
> 2) A building or any part of a building that is in danger of falling down or caving is not considered to be in a state of collapse.
> 3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from

> another part of the building.
> 4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion."
> Exhibit B, Form HOM-7030/EP R2 1/09, para 11, p. 10.

While it is undeniable that subpart 1) of the *Alexander* policy contains the similar phrase "abrupt falling down or caving in," the similarities to the USAA policies end there. The *Alexander* policy contains additional definitional language not found in the USAA policies and material to this Honorable Court's analysis in the *Alexander* matter.

The *Alexander* Court rejected the argument that bulging, or other similar structural conditions, could constitute a caving in under the policy there at issue. However, this construction was reached because the definition found in that particular policy explicitly excluded bulging from the definition of collapse. Exhibit C, p. 4, 9.[2] The *Alexander* policy specifically provided in its definition of collapse that, "[a] building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion." Exhibit B, Form HOM-7030/EP R2 1/09, para. 11, p. 10. It was this language that caused the *Alexander* Court to reject the construction of the term "cave in" as some yielding or submission of pressure manifesting as a bulge or any of the other excluded conditions. Exhibit C, p. 4, 9. The *Alexander* Court did, however, recognize that "falling down" or "caving in" were separate triggers of coverage, but construed that collapse definition as requiring a "caving in" that manifested as something other than a condition specifically excluded from the collapse

---

[2] The Siroises recognize that USAA has attached the *Alexander* transcript to its motion to dismiss as Exhibit B. The Siroises have elected to resubmit this transcript with this opposition simply for the ease of reference. It is otherwise identical to USAA's exhibit.

definition.  Exhibit C, p. 14, 17.

It is in this critical respect that the USAA policy is materially different than that found in *Alexander*.  While the base policy form issued by USAA provides that "[d]amages consisting solely of settling, cracking, shrinking, bulging or expansion is not covered by this additional insurance unless it is the direct result of 'collapse,'" this phrase is deleted by amendatory endorsement.  Exhibit A, Form HO-9R(02) (07-08), para. 8, page 10 of 34, as amended by Form HO-ACPCT (07-12), page 1 of 3.  As a result of this deletion, the construction of the term "caving in" is not constrained by the exclusion of any particular structural conditions and renders the policy language at issue distinguishable from that found in the *Alexander* matter.[3]  Therefore, the Siroises suggest that due to the material difference in policy language, the *Alexander* decision is far less instructive than suggested by USAA and does not compel a similar policy construction in this matter.  Much the same can be said for the *Sports Domain* matter cited by USAA, which contained a four (4) part "collapse" definition nearly identical to that found in *Alexander*.  *Sports Domain, LLC v. Max Specialty Ins. Co.,* 2011 WL 6989864, *2 (Conn. Super. 2011).  The *Sports Domain* Court found that the sagging of the dome at issue was not a collapse, particularly because "collapse" was defined to exclude sagging if the building is still standing, unlike the USAA policy which has deleted the policy provision excluded certain structural conditions from its definition of collapse.  *Id.* at *3.

---

[3] While it appears that some earlier policies did not make this deletion, the language found in the USAA policy is still different from *Alexander* in so far as it specifically excludes fewer structural conditions and makes clear that these conditions are excluded from the definition of collapse to the extent that the damage "solely consists" of those enumerated structural conditions.  In any event, the Siroises have alleged failure mechanisms not enumerated in that provision, such as bowing, jacking, shifting, and other instances of differential inward and upward motion.  First Amended Complaint, Document No. 23, ¶ 13.

**B.      The Policy Definition's Requirement that a Collapse be "Sudden" Does Not Defeat Coverage in this Instance.**

Even if USAA were to concede that a caving in had occurred at the Siroises' property, they argue that there would be no coverage as the policy definition of the term "collapse" requires any such "falling or caving in" to be "sudden."   USAA suggests that because the condition occurring within the walls developed gradually and progressed over the course of years it cannot, under any circumstances, be considered "sudden."   The Siroises suggest that USAA's analysis of the term "sudden" is flawed in two material respects.   First, the term "sudden" has been construed by the Connecticut Supreme Court as meaning "unexpected."   Second, even if there must be some temporal quality interpreted into the term "sudden" that temporal quality is inconsistent with a number of the enumerated collapse perils, particularly the peril of decay that is hidden from view.

**1.      The Term "Sudden" Must Mean "Unexpected".**

As USAA suggests, under either prong of the "collapse" definition, the language of the policy requires that any such collapse must be "sudden" event.   In particular, USAA takes the position that the term "sudden" must mean "temporally abrupt" in the context of the homeowner's policy issued to the Siroises.   To the contrary, the Siroises suggest that USAA's meaning is unsupported by the law it cites and that the term "sudden" is ambiguous and must be construed in their favor.   "Sudden" is defined as "occurring or done unexpectedly or without warning."   Oxford American Dictionary and Thesaurus (2003), *see also* Webster's New World College Dictionary, Third Edition (1997)(defining the term "sudden" as "happening or coming unexpectedly; not foreseen or prepared for").   The notion that the term "sudden" is properly interpreted as "unexpected" is supported by the Connecticut Supreme Court.   *Verdon v.*

- 12 -

*Transamerica Ins. Co.,* 187 Conn. 363, 368 (1982).  In *Verdon* the Supreme Court found that "[a]lthough 'sudden' may also imply quickness, its primary meaning is unexpected."  *Id.*  USAA attempts to sidestep *Verdon* with a flawed analysis of the *Buell* case.

In *Buell,* the Supreme Court distinguished *Verdon* because the language of the insurance policy at issue in that matter utilized the term "sudden *and accidental."  Buell Industries, Inc. v. Greater New York Mut. Ins. Co.,* 259 Conn. 257, 542-543 (2002)(emphasis added).  In particular, the *Buell* Court interpreted a temporal quality to the term "sudden" due to its juxtaposition with the term "accidental."  Because the term "accidental" encompassed the idea of unexpectedness, "sudden" was interpreted to include a temporal element to prevent the term from being superfluous.  *Id.* at 540-541.  As the USAA policies at issue do not juxtapose the term "sudden" with the term "accidental," the analysis found in *Verdon* should control and the term "sudden" should be construed as unexpected in this instance.  Exhibit A, Form HO-9R(02) (07-08), para. 8, page 10 of 34, as amended by Form HO-ACPCT (07-12), page 1 of 3.

The Siroises suggest that they have alleged that the condition within the basement walls of their home was unexpected.  Concrete made with good and sufficient concrete is designed to be a solid homogenous mass that is capable of supporting the wooden portion of a home over the useful life of the structure.  First Amended Complaint. Document No. 23, ¶ 15.  Concrete made with good and sufficient materials is not designed or expected to fracture and expand.  *Id.* at ¶ 16.  Concrete basement walls of a home are not designed or expected to lift the wooden structure of the home upward.  *Id.*  Concrete made with good and sufficient material is designed and expected to resist the lateral pressure of the soil surrounding it.  *Id.* at ¶ 17.  By contrast, concrete made with good and sufficient materials is not designed or expected to display failure

mechanisms, such as bulging, bowing, and other manners of differential motions as they give way to external forces.  *Id.*  In all, concrete made of good and sufficient materials is designed and expected to last for hundreds of years, not to decompose in the span of a few short decades.  *Id.* at ¶ 18.  Therefore, the Siroises suggest that the allegations of the First Amended Complaint suggest that the damage suffered to the home was unexpected.

### 2.    In the Alternative, The Term "Sudden" is Ambiguous.

There is another layer of inconsistency to USAA's proffered policy interpretation that emanates not from case law, but from the policy language itself. The purported blanket exclusion for all gradually occurring "collapses" is antithetical to many of the enumerated perils purportedly covered by the section.  In fact, the majority of the specifically enumerated perils covered by the "collapse" provision contemplate, to varying degrees, damage occurring over a period of time.  Homeowners faced with the JJ Mottes concrete typically look to only two (2) of the enumerated "collapse" perils when seeking coverage – decay that is hidden from view[4] or defective materials used in construction.  Exhibit A, Form HO-9R(02) (07-08), para. 8, page 10 of 34, as amended by Form HO-CT (02-14), page 1 of 8.

"Decay" is a process which, by definition occurs over a period of time.  *See* Webster's New World College Dictionary, 1997, which defines "decay" as "to lose strength, soundness, health, beauty, prosperity, etc. *gradually."*  (emphasis added).  Similarly, by requiring that a "collapse" due to defective materials used in construction occur *after* the completion of construction, the policy contemplates damage stretching over the useful life of a building.  With

---

[4] While USAA's policies cast the peril in terms of "decay that is hidden from view," many homeowner's policies refer to the peril as "hidden decay."  The Siroises suggest that there is little in the way of meaningful difference between these variations.

respect to a single family home such as the Siroises, the useful life can reasonably be expected to reach at least one hundred (100) years.  First Amended Complaint, Document No. 23, ¶ 18. Furthermore, a "collapse" is also covered by the policy if it is the result of "insect or hidden vermin damage that is hidden from view."  Exhibit A, Form HO-9R(02) (07-08), para. 8, page 10 of 34, as amended by Form HO-CT (02-14), page 1 of 8.  Respectfully, insect and vermin damage does not cause either a substantial impairment to the structural integrity of a building, much less a catastrophic falling down of a building, in the short term, but rather, such damage would only impact a structure to the point of collapse gradually over a period of time.  As such covered perils for "collapse" are clearly contemplated to be gradual in nature, the policy interpretation of the term "sudden" proffered by USAA seems quite inconsistent with the intent of the coverage provided.

The notion that policy language purporting to require a temporally abrupt event renders the "collapse" provision ambiguous has been accepted by at least one (1) other court with the occasion to address this issue.  *See Kelly v. Balboa Ins. Co.,* 897 F.Supp.2d 1262, 1268 (M.D. Fla. 2012).  The *Kelly* court construed the phrase "sudden and accidental" in the context of a collapse provision similar to the one at issue in this motion.  *Id.*  The Court found that the term "sudden" rendered the provision ambiguous because the enumerated perils of "hidden decay" and "hidden insect or vermin damage" occur over a period of time "by their very nature."  *Id.* The Court then found that the inclusion of the term "sudden" in a provision providing coverage for long term perils such as hidden insect damage, rendered the whole provision ambiguous.  *Id.* The Court then construed the provision against the insurer to find that a "collapse" need not be "sudden" where it is caused by hidden decay or hidden insect damage.  *Id.*  The Siroises suggest

that this decision is well reasoned and that, to the extent that the term "sudden" may require some temporally quick event, this Honorable Court should construe the collapse policy against the insurer and in favor of coverage by finding that a collapse caused by those perils that naturally occur gradually need not be abrupt or have some temporal quality.

These sentiments were also expressed by the Second Circuit Court of Appeals, in construing collapse coverage.  In *Dalton* the Court rejected the notion that a collapse must involve a "sudden destructive force" is inconsistent with the enumerated collapse perils of hidden decay and hidden insect or vermin damage.  *Dalton v. Harleysville Worcester Mut. Ins. Co.,* 557 F.3d 88, 93 (2d Cir. 2009).   The Court explained that "[b]y their very nature, hidden decay and hidden insect or vermin damage occur slowly and not as a sudden destructive force."  *Id.*  Therefore, the Court found that even if a collapse loss may typically require some sudden event, "that is surely not the case where the policy in question defines collapse in a manner which expressly includes conditions that occur only slowly."  *Id.*

In contrast, USAA cites to the *Buell* case, which construed the phrase "sudden and accidental," not in connection with the "collapse" provision in a standard homeowner's insurance policy, but rather, in the context of a pollution exclusion found in a commercial general liability policy.  Even setting aside the distinct policy language at issue in *Buell,* the Siroises suggest that because of the inherent gradual nature of the majority of the enumerated "collapse" perils, the reasoning of *Buell* bears little applicability to the policy language at issue. The *Buell* Court construed the term "sudden and accidental" in the context of an exception to a commercial general liability policies exclusion for bodily injury resulting from pollution.  *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.,* 259 Conn. 527 (2002).  The policy at issue in the

case excluded coverage related to pollution, but did provide limited coverage where the discharge of the pollution was "sudden and accidental." *Id.* *Buell* was well reasoned in the context of pollution as the damage or event is the same in either event – the discharge of pollution – but that it was only the circumstances of the discharge that affected the issue of coverage. This prompted the Court to find that a temporal element of abruptness was necessary to meet coverage, otherwise the term "sudden" would be superfluous and there would be potential coverage for pollution occurring over a long period. *Id.* at 540-541. We are dealing here with entirely different policy language where the application of a temporal quality would render the coverage provided a sham.

Whereas pollution can occur due to a quick release of pollutants or due to a gradual release of pollutants, there is no quick type of decay. Nor is a collapse caused by defective material, where that collapse may occur any time after construction, necessarily quick. To impose the same temporal quality found in the pollution coverage analysis on the "collapse" provision, with its gradually occurring enumerated perils, would serve only to render coverage under the "collapse" provision a nullity. Such a construction should not be imposed by the court. *Northrop v. Allstate Ins. Co.*, 247 Conn. 242, 251 (1998). To impose such a construction on this insurance policy would serve only to lull the layman into a false sense of security, believing that "collapse" due to long term perils will be covered when, by the use of inconsistent terminology, USAA is free, after the claim has been filed, to deny coverage for gradual losses. If the term "sudden" is surplusage by this construction it is due only to USAA's use of inconsistent terminology in drafting the "collapse" provision of its policies. The Siroises suggest that any lay insured would rightfully and reasonably believe that terms such as "decay" contemplate gradual

damage and that this expectation should be protected.  *Vermont Mut. Ins. Co. v. Walukiewicz,* 290 Conn. 582, 592 (2009).

USAA's misplaced reliance on the *Buell* case, despite materially different policy language, extends to its analysis of the *Alexander* matter.  Again, *Alexander* involved a definition of the term "collapse" that is materially different from that at issue in this matter.   While the *Alexander* Court construed that particular collapse definition as having a temporal quality, the policy at issue in *Alexander* required that a collapse be "abrupt" and did not use the term "sudden."  Exhibit B, Form HOM-7030/EP R2 1/09, para. 11, p. 10; Exhibit C, p. 13-14, 18. USAA relies upon *Alexander* in concert with *Buell,* arguing that because *Buell* interpreted the term "sudden" to mean "abrupt," the *Alexander* Court's rejection of the Siroises proffered ambiguity is persuasive.  However, as discussed more fully above, this matter is distinguishable from *Buell* and, by extension, *Alexander* as the USAA policies use the term "sudden" not "sudden and accidental."  As a result, the analysis here is controlled by *Verdon,* where the term "sudden" was construed to mean "unexpected."  *Verdon v. Transamerica Ins. Co.,* 187 Conn. 363, 368 (1982).  Furthermore, the Siroises suggest that the *Alexander* Court's construction of the term "abrupt" is flawed, as it construed the ambiguity resulting from the juxtaposition of the term "abrupt" with the enumerated perils that are gradual in a manner more favorable to the insurer.  However, under Connecticut law any ambiguity in an insurance policy must be construed against the insurer and in favor of coverage.  *Middlesex Ins. Co. v. Mara,* 699 F.Supp.2d 439, 446-447 (D.Conn. 2010); *Beach v. Middlesex Mut. Ass. Co.,* 205 Conn. 246, 249-250 (1987).

Much the same may be said of the *Nestani* matter cited by USAA in support of its

interpretation of the term "sudden."  First and foremost, *Nestani* was not applying Connecticut Law, which establishes that the term "sudden," when not paired with the term "accidental," means unexpected.  *Verdon v. Transamerica Ins. Co.,* 187 Conn. 363, 368 (1982).  Even so, the policy at issue in *Nestani* also involved a materially different definition of collapse from that found in the USAA policy, providing that "[c]ollapse means actually fallen down or into pieces." *Ass'n of Unit Owners of Nestani v. State Farm Fire and Cas. Co.,* 670 F.Supp.2d 1156, 1162 (D. Or. 2009).  The Siroises suggest that this distinction is material, particularly in reference to the Ninth Circuit's treatment of the matter on appeal.  The Ninth Circuit affirmed the District Court's analysis on the grounds that the conclusion that no collapse had occurred was appropriate given the policy definition of the term.  *Ass'n of Unit Owners of Nestani-A Grecian Villa v. State Farm Fire and Cas. Co.,* 434 Fed.Appx. 579 (9th Cir. 2011).  The Ninth Circuit agreed with the District Court's determination that no event meeting the definition of "collapse" had occurred and that the state of the insured structure was one of impairment, which was insufficient under that particular collapse provision.  *Id.*  Importantly, the Ninth Circuit declined to review the District Court's reasoning as to the term sudden as it was able to affirm the decision solely interpretation of the collapse definition.  As a result, the Siroises suggest that this matter is distinguishable and uninstructive.

## IV.    **The Siroises Have Properly Pleaded a Claim for Violation of CUIPA.**

The State of Connecticut prohibits insurance companies from employing unfair and deceptive practices while conducting the business of insurance.  Conn. Gen. Stat. § 38a-815. Among the many acts and practices defined to be "unfair and deceptive" is the failure of an insurance company to "attempt[] in good faith to effectuate prompt, fair and equitable

settlements of claims in which liability has become reasonably clear."  Conn. Gen. Stat. § 38a-816(6)(F).  The Siroises have alleged that USAA has wrongfully denied their claim on untenable grounds and in a manner contrary to the provisions of the insurance policies issued to them.  First Amended Complaint, Document No. 23, ¶ 26, 38-40.  The Siroises have alleged that USAA gave them a knowingly false and misleading reason for denial of coverage.  *Id.* at ¶ 53.  The Siroises have alleged that USAA has arbitrarily refused to pay a claim which a reasonable person would determine to be covered by one or more of the insurance policies issued by USAA to the Siroises.  *Id.* at ¶ 40.  The Siroises have further alleged that USAA has engaged in this conduct as a part of its general business practice.  *Id.* at ¶ 39-42.  The Siroises suggest that these allegations, read in the light most favorable to them, properly allege that USAA engaged in conduct proscribed by CUIPA.

This Honorable Court has had the opportunity to construe allegations nearly identical to those made by the Siroises on a number of prior occasions.  The sufficiency of allegations identical or nearly identical to these have been sustained by this Honorable Court on at least seven (7) separate occasions.  *Shawn M. Kowalyshyn, et al. v. Peerless Ins. Co., et al.,* 3:16-cv-00148 (JAM), attached hereto at Exhibit D; *David Mensher, et al. v. Liberty Mut. Fire Ins. Co.,* 3:15-cv-01007 (WWE), attached hereto at Exhibit E; *Stephen A. Metsack, et al. v. Liberty Mut. Fire Ins. Co., et al.,* 2015 WL 5797016, * 9-11 (D. Conn. 2015); *Raymond G. Gabriel, et al v. Liberty Mut. Fire Ins. Co.,* 2015 WL 5684063, * 5 (D. Conn. 2015); *Stephen Belz, et al. v. Peerless Ins. Co.,* 46 F.Supp.3d 157, 165-167 (D. Conn. 2014); *Steven Karas, et al. v. Liberty Mut. Ins. Co.,* 33 F.Supp.3d 110, 117 (D. Conn. 2014); *Danny Panciera, et al. v. Kemper Independence Ins. Co.,* 2014 WL 1690387, * 4-5 (D. Conn. 2014).  In particular, two (2) of these

prior decisions have stated clearly that citation to inapplicable exclusions in denying coverage supports the notion that an insurer has engaged in conduct proscribed by CUTPA/CUIPA. *Raymond G. Gabriel, et al v. Liberty Mut. Fire Ins. Co.,* 2015 WL 5684063, * 5 (D. Conn. 2015); *Steven Karas, et al. v. Liberty Mut. Ins. Co.,* 33 F.Supp.3d 110, 117 (D. Conn. 2014).

USAA attempts to distinguish this matter from the overwhelming number of matters finding similar allegations sufficient by again suggesting that the *Alexander* analysis applies to this matter and renders the issue of coverage fairly debatable. First and foremost, USAA's suggestion that the *Alexander* guided its coverage position is factually unsupported. USAA's June 1, 2016 denial preceded the *Alexander* decision by over a month and, therefore, the decision could not have played any part in USAA's coverage analysis. Exhibit C; Exhibit F. Even so, as discussed more fully above, the *Alexander* case involved policy language so materially different from that at issue in this matter that it should be relied upon by USAA in any meaningful way. In any event, the Siroises suggest that as they have properly pleaded a claim for violation of the consumer protection statutes, USAA's arguments as to whether coverage was fairly debatable are premature. The *Tucker* matter cited by USAA for the proposition that liability has to be "substantially certain" is not only distinguishable from this matter in a material way, but also, a closer examination of the cited principle undercuts USAA's reliance on the matter.

*Tucker* involved a "claims made" policy rather than an "occurrence" policy and involved a claim that was clearly made outside of the policy period at issue and established by a previous judgment. *Tucker v. American Intern. Group,* 2015 WL 403195 (D. Conn. 2015). This particular factual record led to the resounding conclusion that liability had not become reasonably clear. In a footnote, *Tucker* cited to a hornbook opinion that for liability to be

reasonably clear for purposes of an unfair insurance practices statute, the existence of liability has to be substantially certain.  *Id.* at *27 n48.  By way of explanation as to when liability is substantially certain, *Tucker* referred to the similar standard found in Massachusetts law for determining whether liability is reasonably clear for the purposes of M.G.L. c. 176D – Massachusetts' iteration of the uniform unfair insurance practices act – which standard was expressed in a Massachusetts Federal District Court case.  *Id. citing Bohn v. Vermont Mut. Ins. Co.,* 922 F.Supp.2d 138, 146-147 (D. Mass. 2013).  Under the standard cited by *Tucker,* liability is reasonably clear "if a reasonable person, with knowledge of the relevant facts and law, would probably have concluded that the insurer was liable to the plaintiff."  *Bohn v. Vermont Mut. Ins. Co.,* 922 F.Supp.2d 138, 146-147 (D. Mass. 2013).  However, under this objective standard employed in Massachusetts, it is up to the "fact finder to determine whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff."  *Demeo v. State Farm Mut. Auto Ins. Co.,* 38 Mass. App. Ct. 955, 956-957 (1995).  Even under the objective standard cited by *Tucker*, it is up to the jury to judge whether liability became reasonably clear and, as a result, the issue is not appropriate for resolution at the pleading stage.  Therefore, the Siroises suggest that they have pleaded a claim for violation of CUTPA/CUIPA that is sufficient to survive a motion to dismiss.

## CONCLUSION

For the foregoing reasons, the plaintiffs, Michael L. Sirois and Alicia M. Sirois, respectfully request that this Honorable Court deny the defendant, USAA Casualty Insurance Company's, Motion to Dismiss.

**PLAINTIFFS,**
**MICHAEL L. SIROIS and**
**ALICIA M. SIROIS**


By: */s/ Jeffrey R. Lindequist, Esq.*
    Jeffrey R. Lindequist, Esq.
    One Monarch Place, Suite 2220
    Springfield, MA 01144
    (413) 736-4101 – *Telephone*
    (413) 736-4582 – *Facsimile*
    jlindequist@mdparkerlaw.com
    Federal Bar #ct29425

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **December 2, 2016**, a copy of foregoing **Plaintiffs'
Memorandum of Law in Opposition to the Defendant's Motion to Dismiss** was filed
electronically and served by mail on anyone unable to accept electronic filing. Notice of this
filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or
by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic
Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Jeffrey R. Lindequist, Esq.*