UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL M. SIROIS and<br>ALICIA M. SIROIS<br><br>       Plaintiffs,<br><br>v.<br><br>USAA CASUALTY INSURANCE<br>COMPANY<br><br>       Defendant. | :<br>:<br>:<br>:<br>: Case No. 3:16-cv-01172-MPS<br>:<br>:<br>:<br>:<br>: December 16, 2016<br>:<br>: |

### DEFENDANT USAA CASUALTY INSURANCE COMPANY'S
### REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS

**I.** **Plaintiffs have not alleged facts sufficient to support a claim that a covered collapse has occurred.**

Plaintiffs fail to state a claim for coverage under the USAA Policies' limited collapse coverage, which requires "[a] sudden falling or caving in," or "[a] sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use." (See ECF 24-2, Form Homeowners 9R(02) Preferred Protection Plan (07-08) at 1 of 34, as amended by Form HO-ACPCT (07-12), at 1 of 3). Plaintiffs concede that they have not sufficiently alleged a "falling." (ECF 25, at 8). Instead, Plaintiffs assert that their claims of "differential inward and upward motion" constitute a "caving in." (Id. at 8). Plaintiffs attempt to create ambiguities in the Policies' requirement of a "sudden" "caving in" in order to bring their claim within its scope. But the Connecticut Supreme Court has rejected Plaintiffs' construction of the term "sudden" as meaning "unexpected" rather than temporally abrupt. And Plaintiffs' claim that the Policies' language is ambiguous, because a "sudden" collapse cannot be triggered by long-term "decay that is hidden from view," was

rejected by the court in *Alexander v. General Ins. Co. of America*, Docket No. 3:16-cv-0059 (D. Conn. July 7, 2016) (ECF 24-3 at pp. 13-14, 16).

What Plaintiffs describe as a "caving in" does not satisfy the Policies' requirement of a "sudden" event. They allege that their claimed damages are part of a process that originated in the aggregate used in their foundation concrete – "deterioration" that has "continue[d] to advance" over time. (ECF 23, Compl., ¶¶ 8-10). The only "sudden" event they reference is something that will occur in the future, if it occurs at all – that time when the walls "fall in due to the exterior pressure from the surrounding soil." (Id., ¶ 11). The "failure mechanisms" that they allege the concrete has "begun to exhibit" – "bowing, bulging, jacking shifting, and other instances of differential inward and upward motion" – do not constitute a "sudden" "caving in." (Id., ¶ 13). Tellingly, the phrase "caving in" appears nowhere in the Amended Complaint.[1]

### a. Plaintiffs have failed to allege a "sudden" event, required in order for collapse coverage to apply.

The Connecticut Supreme Court's decision in *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 540 (2002) held that "sudden," as used in an insurance policy, means "temporally abrupt," not "unexpected," as plaintiffs there contended. Plaintiffs in this case nevertheless proffer the same definition of "sudden" – "unexpected" that the Supreme Court rejected in *Buell*. They argue, unconvincingly, and in a manner inconsistent with the reasoning of the *Buell* court, that "sudden" means something different when it is juxtaposed with "accidental" than it does on its own. (ECF 25, at 13).[2]

---

[1] In addition to not constituting a covered "collapse," as discussed in USAA's main brief (ECF 24-1 at 7-10), Plaintiffs' claimed loss of "pattern cracking" in the "basement walls" falls within several policy exclusions, including the exclusion for loss caused directly or indirectly by "deterioration," "rust," "[s]ettling, cracking, . . . bulging or expansion of . . . walls," and loss caused by faulty or defective "materials used in . . . construction." (See ECF 24-2, Form Homeowners 9R(02) Preferred Protection Plan (07-08) at 15-16, 18 of 34).

[2] Plaintiffs further try to distinguish *Buell*, which construed the phrase "sudden and accidental" in an exception to a pollution exclusion, by arguing that while pollution can occur due to a sudden or gradual release of pollutants, "there is no quick type of decay." (ECF 25, at 17). Again, Plaintiffs treat the USAA Policies as if they

2

Plaintiffs, like the unsuccessful plaintiff in *Buell*, argue that *Verdon v. Transamerica Ins. Co.*, 187 Conn. 363, 368 (1982) supports an interpretation of the term "sudden" as meaning "unexpected." *Verdon* considered the interpretation of the term "casualty" in Connecticut's direct action statute, then Conn. Gen. Stat. § 38-175, and approved of the trial court's use of a dictionary definition of that term as "an accident; event due to sudden, unexpected, or unusual cause." *Id.*, at 366. In addition to the fact that the court in *Verdon* was interpreting the term "casualty," and not the term "sudden," plaintiffs fail to mention that the *Verdon* court specifically held that its interpretation of the term "casualty" was "of course, limited to its significance as used in § 38-175." *Id.* at 368. The court specifically noted that "in other contexts [casualty] may have a more restricted connotation." *Id.* Plaintiffs also fail to mention that the Supreme Court in *Buell* went to considerable lengths explaining why *Verdon* was inapplicable outside of its facts. 187 Conn. at 541-543. Under Connecticut law, as set forth in *Buell*, the term "sudden" in an insurance policy means temporally abrupt, not "unexpected."

Plaintiffs' argument that "concrete made of good and sufficient materials is designed and expected to last for hundreds of years, not to decompose in the span of a few short decades" does not help their collapse claim. (ECF 25, at 13). Given that "sudden" means "temporally abrupt," Plaintiffs' claim that they did not expect their foundation to deteriorate (over a few <u>decades</u>) does not bring their claim within the limited coverage for "[a] <u>sudden</u> . . . caving in." Their argument instead reinforces that the Policies' exclusion for loss caused by faulty or defective "materials used in . . . construction" applies to preclude coverage for Plaintiffs' loss. (ECF 24-2, Form Homeowners 9R(02) Preferred Protection Plan (07-08) at 18 of 34).

---

provided coverage for "decay that is hidden from view," rather than a "sudden" collapse. As the Court made clear in *Alexander*, it is not unusual for hidden long-term decay to result in a "sudden" collapse -- the beam that finally snaps after being eaten from within for years by termites. *Alexander v. General Ins. Co. of America*, Docket No. 3:16-cv-0059 (D. Conn. July 7, 2016) (ECF 24-3 at pp. 13-14, 16).

3

The Court should also reject Plaintiffs' alternative argument that the term "sudden" in the collapse coverage is facially ambiguous because certain specified perils that can lead to a collapse – for example, "decay that is hidden from view" – can occur "gradually over a period of time." (See ECF 25, at 14-15). This argument is misleading. While "decay that is hidden from view" implies a deteriorative process, a *collapse* caused by hidden decay may indeed be a "sudden" event – and only sudden events fall within the scope of the limited coverage for collapse provided in the USAA Policies. There is nothing ambiguous about a "sudden" collapse caused by hidden decay, as Judge Underhill held in *Alexander v. General Ins. Co. of America*, Docket No. 3:16-cv-0059 (D. Conn. July 7, 2016) (ECF 24-3 at pp. 13-14, 16). To illustrate this point, Judge Underhill provided the example of damage to a house caused by termites eating away at a beam. (Id.). There would be no coverage for the loss until the beam falls, at which point, "[t]he fact that it was caused by termites and it was a slow process doesn't mean you didn't have an abrupt collapse." (Id.).

Plaintiffs cite one Florida case, *Kelly v. Balboa Ins. Co.*, 897 F. Supp. 2d 1262 (M.D. Fla. 2012) for their argument that the term "sudden" is somehow ambiguous. (ECF 25, at 15). *Kelly*, which has never been cited in another decision for the proposition upon which Plaintiffs rely, involved the question of whether a "collapse" potentially occurred during the applicable policy period. The court denied the insurer's motion for summary judgment, because it found a factual dispute on that issue. The court also stated, without analysis, that the term "sudden" in the policy's collapse provision was ambiguous as applied to hidden decay and hidden insect or vermin damage. The court failed to address the point made by Judge Underhill in *Alexander*— that, although hidden decay occurs gradually, it can and does cause an abrupt, or sudden collapse when a structural component of the building fails. This aspect of the *Kelly* decision, unsupported

4

by any analysis, is clearly wrong and directly contrary to Judge Underhill's decision in *Alexander*. As the *Alexander* court held, hidden decay occurring over time may indeed lead to an abrupt, or sudden collapse, and there is nothing ambiguous about that.[3]

Plaintiffs cannot escape the holding of *Buell*, articulated at length and in broad terms, that "sudden" means "temporally abrupt." Plaintiffs do not allege a "sudden," or temporally abrupt event, but rather allege continuous "deterioration." (ECF 23, at ¶ 10). There is nothing "sudden" about a process of deterioration that has occurred slowly and incrementally since the first pouring of the concrete, and continues to this day.[4]

### b. Plaintiffs have not plausibly alleged a sudden "caving in" of their foundation walls.

Seeking again to avoid the clear language of the USAA Policies, Plaintiffs claim that the term "caving in" is ambiguous. Plaintiffs argue that "cave- in" *could* mean "yield" or "submit to pressure" under a dictionary definition. (ECF 25, at 8). They claim that under this proffered definition, "caving in" *could* mean bulging, bowing, jacking, shifting, and other instances of "differential inward and upward motion" of foundation walls. (*Id.*). The Court should decline Plaintiffs' invitation to "find ambiguity where there is none." *Moore v. Cont'l Cas. Co.*, 252 Conn. 405, 414, 746 A.2d 1252, 1256 (2000). This violates the cardinal principle that "any

---

[3] Plaintiffs' reliance on *Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88 (2d Cir. 2009), is similarly unavailing. The policy in *Dalton*, unlike the USAA Policies here, did not require that collapse be "sudden." Due to the absence of this language, the court, interpreting New York law, held that, where a policy *did not* specify a "sudden" requirement or otherwise define "collapse," a collapse caused by hidden decay or insect damage did not, as a matter of law, require a "sudden destructive force." *Id.* at 93. In so holding, the Second Circuit further noted in a footnote that a case involving a policy that *was* construed to require a "sudden impact" *would be distinguishable*. *Id.* at 92 n.1. Accordingly, *Dalton* is inapplicable in a case, such as this one, where the requirement of "suddenness" is written into the Policies' coverage.

[4] Plaintiffs attempt, without success, to distinguish *Ass'n of Unit Owners of Nestani v. State Farm Fire & Cas. Co.*, 670 F. Supp. 2d 1156 (D. Or. 2009), *aff'd sub nom. Ass'n of Unit Owners of Nestani-A Grecian Villa v. State Farm Fire & Cas. Ins. Co.*, 434 F. App'x 579 (9th Cir. 2011). *Nestani*, like *Buell*, interpreted the term "sudden" to mean "temporally abrupt" in the context of a collapse provision that provided: "We insure only for direct physical loss to covered property involving the *sudden*, entire collapse of a building or any part of a building." (emphasis added) *Id.* at 1161-62. As to the meaning of "sudden" in this context, *Nestani* is persuasive authority.

interpretation that would torture the ordinary meaning of the words to create ambiguity will be rejected. *DeWitt v. John Hancock Mutual Life Ins. Co.*, 5 Conn. App. 590, 594, 501 A.2d 768 (1985)." *Spero v. Zoning Bd. of Appeals*, 217 Conn. 435, 441, 586 A.2d 590, 593 (1991).[5]

Notably, Plaintiffs fail to cite any cases adopting their proposed definition of the term "caving in." (ECF 25, at 8). In *Beach v. Middlesex Mut. Assurance Co.*, 205 Conn. 246, 249, 532 A.2d 1297, 1299 (1987), a collapse case,[6] the Connecticut Supreme Court recognized that "no actual caving-in occurred" despite evidence that there was a nine inch crack in the foundation wall, the wooden support beams on the top of the foundations walls had pulled apart, and there was testimony that "the foundation wall had tipped over into the basement from the top."[7] Moreover, the term "caving in" must be considered in the context of a reasonable, harmonious reading of the entire policy. *Buell*, 259 Conn. at 539 ("[s]ince it must be assumed that each word contained in an insurance policy is intended to serve a purpose, every term will be given effect if that can be done by any reasonable construction."). The USAA Policies exclude "[s]ettling, cracking, shrinking, *bulging* or *expansion* of. . .walls." (ECF 24-2, Form Homeowners 9R(02) Preferred Protection Plan (07-08) at 15-16 of 34). Cracking, bulging and expansion of foundation walls is precisely what Plaintiffs claim as their loss. (ECF 23, at ¶¶ 7, 13). To consider this a "sudden. . .caving in" does violence to a harmonious construction of the USAA Policies, as well as common sense.

---

[5] As the Connecticut Supreme Court noted in *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 544 (2002), "[t]he existence of more than one dictionary definition is not the sine qua non of ambiguity. If it were, few words would be unambiguous." Id.

[6] In *Beach*, unlike this case, the term "collapse" was undefined.

[7] Plaintiffs cite *Gulino v. Econ. Fire & Cas. Co.*, 2012 IL App (1st) 102429, ¶ 22, 361 Ill. Dec. 420, 427, 971 N.E.2d 522, 529, for the proposition that a "caving in" "connotes the undermining of a structure that can be something less than a complete falling down." (ECF 25, at 8). In *Gulino*, the court concluded that the plaintiff had sufficiently alleged a "caving in" where the allegations and evidence showed that a basement ceiling had sunk eight inches and had pulled a pipe from its brackets. Id., at 528. In its analysis, the court cited a dictionary definition of the word "cave" as "*to fall in or down* esp[ecially] from being undermined." (Emphasis added). *Id.*

Plaintiffs attempt to distinguish Judge Underhill's decision in *Alexander*, discussed in detail in USAA's principal brief, by claiming that the *Alexander* policy "contains additional definitional language not found in the USAA policies." (ECF 25, at 9-10). The fundamental similarities between the policy in *Alexander* and the USAA Policies belie this purported distinction. Like the policy in *Alexander*, which defined collapse, in part, as an "**abrupt** falling down or caving in of a building or part of a building" (emphasis added), the USAA Policies' require a "**sudden** falling down or caving in." (emphasis added).[8] Also like the policy in *Alexander*, the USAA Policies expressly exclude coverage for "[s]ettling, cracking, shrinking, *bulging* or *expansion* of. . .walls." (ECF 24-2, Form Homeowners 9R(02) Preferred Protection Plan (07-08) at 15-16 of 34).

In *Alexander*, the court noted that the plaintiff's claim had "several problems." (ECF 24-3, at 22). First, the court stated that "there has been no abrupt falling down or caving in of a building or any part of a building for which coverage applies . . ." (Id., at 23). The court continued: "*Even if that had been met*, what we have here is . . . cracking, bulging, etc. Those situations are also excluded by the third provision [of the collapse coverage, which states generally that a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking or bulging]." (Id., at 22-23). The same is true here – when the Policies are read as a whole, mere cracking or bulging is expressly excluded from coverage, and thus it would be inconsistent to consider "caving in" the same as cracking or bulging. Moreover, such an interpretation is also illogical when the term "caving in" is juxtaposed with "sudden," the word that immediately precedes it in the USAA Policies. Cracking or bulging that

---

[8] As noted in USAA's principal brief, and as discussed further in this reply brief, the Connecticut Supreme Court's decision in *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 540 (2002) held that "sudden," as used in an insurance policy, means "temporally abrupt." Thus, the terms "sudden" and "abrupt" are synonymous for purposes of policy construction.

has occurred over time cannot, under any reasonable interpretation, be considered "sudden caving in."

## II. Because Count I Should be Dismissed, Count II (Violation of CUTPA and CUIPA) Should Be Dismissed As Well.

Plaintiffs do not appear to dispute that if there is no coverage under the Policies, there can be no liability for a CUTPA/CUIPA violation. Therefore, if the Court grants USAA's motion to dismiss Count I, it should also dismiss Count II. *See, e.g., Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 378 (2008) (where insurer's interpretation of policy was correct, there could be no CUTPA/CUIPA violation); *see also Rancourt v. Allstate Ins. Co.*, 2008 Conn. Super. LEXIS 3024, *7 (Conn. Super. Ct. December 1, 2008) ("[S]ince the defendant [insurer] had no obligation to pay under the policy, the defendant could not have violated CUIPA or CUTPA."); *Wright v. State Farm Mutual Automobile Ins. Co.*, 1997 Conn. Super. LEXIS 3122, *10 (Conn. Super. Ct. Nov. 18, 1997) ("Having no obligation to pay under the policy, State Farm could not have violated CUIPA or CUTPA.").

## III. Plaintiffs have failed to state a legally sufficient CUTPA/CUIPA claim.

Even if this Court does not dismiss Plaintiffs' breach of contract claim, USAA's coverage position in this case is, at a minimum, reasonable and fairly debatable, which precludes liability under CUTPA for violation of CUIPA. See, e.g., *Chi. Title Ins. Co. v. Bristol Heights Ass'n, LLC*, 2009 Conn. Super. LEXIS 3508, *23 (Conn. Super. Ct. Dec. 30, 2009) (granting summary judgment in favor of insurer on CUTPA/CUIPA claim because "liability was anything but 'reasonably clear'"); *Bauco v. Hartford Fire Ins. Co.*, 2004 Conn. Super. LEXIS 564, *43 (Conn. Super. Ct. Mar. 3, 2004) (same result).

The only provision of CUIPA that Plaintiffs invoke in their Amended Complaint and opposition brief is Conn. Gen. Stat. § 38a-816(6)(f), which proscribes "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." (ECF 23, ¶ 43). An insurer that has a good faith basis for denying coverage cannot be in violation of § 38a-816(6)(f), which requires, as a condition, that "liability has become reasonably clear," which "means that the existence of liability has to be substantially certain." *Tucker v. Am. Int'l Group, Inc.*, 2015 U.S. Dist. LEXIS 9874, *90 n.48 (D. Conn. Jan. 28, 2015) (quoting 2 Insurance Claims and Disputes § 9:35 (6th ed. updated March 2014) (emphasis added).[9]

Plaintiffs provide a string citation to District Court cases that have denied insurer motions directed to CUTPA/CUIPA claims. (ECF 25, at 20). None of these cases, however, have considered the import of the requirement that liability be "substantially certain" or "reasonably clear" in order to state a claim under Conn. Gen. Stat § 38a-816(6)(f). Two of the cases Plaintiffs cite, *Kowalshyn v. Peerless Ins. Co.*, 3:16-cv-00148 (JAM) and *Mensher v. Liberty Mutual Fire Ins. Co.*, 3:15-cv-011007 (WWE), are one-paragraph orders with no analysis. Although the court in *Metsack* denied the defendant's motion to dismiss, it described the plaintiffs' ISO-related allegations as "strik[ing] this Court as failing to cross the line between 'possible' and 'plausible.'" *Metsack v. Liberty Mut. Fire Ins. Co.*, No. 3:14-CV-01150 (VLB), 2015 U.S. Dist. LEXIS 131984, at *26 (D. Conn. Sep. 30, 2015). The factual background of the cases cited also reveal differences. In *Panciera v. Kemper Indep. Ins. Co.*, No. 3:13cv1009 (JBA), 2014 U.S. Dist. LEXIS 59076, at *5 (D. Conn. Apr. 29, 2014), the plaintiffs had alleged

---

[9] Plaintiffs try in vain to distinguish *Tucker*, arguing that it involved different facts. What Plaintiffs cannot deny is that the court in *Tucker* applied the "substantially certain" standard to dismiss a CUTPA/CUIPA claim, as a matter of law, on summary judgment. Given the state of the law in Connecticut on "collapse" coverage, and USAA's policy language, it is not plausible to conclude that USAA's liability here is "substantially certain."

9

that the defendant insured "denied coverage of their claim despite the fact that [its] field adjuster determined that the damage to their foundation was caused by a peril covered under the collapse provision of their policy."

Here, USAA's coverage position is supported by exclusions that apply directly to the type of loss Plaintiffs claim. Its interpretation of the "sudden" requirement for a collapse correlates directly with the Connecticut Supreme Court's decision in *Buell*. Moreover, as discussed in USAA's main brief, where Judge Underhill of this court recently granted a motion to dismiss a lawsuit involving similar policy language, it cannot be said that USAA's liability to Plaintiffs was "reasonably clear." Although Plaintiffs seek to diminish the import of the *Alexander* ruling by stating that USAA had already issued its coverage position before *Alexander* was released, USAA is not claiming that it relied on *Alexander* in denying coverage but rather that a recent decision of this court concluding that similar allegations do not support a claim for coverage under similar policy provisions reinforces that liability could not have been reasonably clear. (ECF 25, at 21).

## IV.   Conclusion

This Court should reject Plaintiffs' attempt to create ambiguity in USAA's Policies. Plaintiffs do not and cannot allege that their home has suffered a "sudden" collapse. Their claims of "pattern cracking" are plainly excluded from coverage (ECF 23, ¶8). Even if they are not, which USAA denies, a good-faith coverage dispute, as exists here, cannot form the basis of CUTPA/CUIPA liability.

For the foregoing reasons, Plaintiffs have failed to state a claim upon which relief can be granted, and Counts I and II should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

DEFENDANT
USAA CASUALTY INSURANCE
COMPANY

By /s/ *Jenna L. Veronneau*
    Raymond T. DeMeo (ct02189)
    Jenna L. Veronneau (ct30076)
    Robinson & Cole LLP
    280 Trumbull Street
    Hartford, CT 06103-3597
    E-mail: jveronneau@rc.com
    Tel. No.: (860) 275-8200
    Fax No.: (860) 275-8299

## CERTIFICATION

I hereby certify that on this date, December 16, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*_/s/ Jenna L. Veronneau_*
Jenna L. Veronneau