UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL M. SIROIS and<br>ALICIA M. SIROIS<br>    Plaintiffs,<br><br>v.<br><br>USAA CASUALTY INSURANCE COMPANY<br>    Defendant. | No. 3:16-cv-1172 (MPS) |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Michael L. Sirois and Alicia M. Sirois filed this action in state court against their homeowner's insurance provider, USAA Casualty Insurance Company ("USAA"), for failure to pay for damages to the basement walls of their home caused by cracking and deterioration in the concrete. USAA removed the case to this court on July 13, 2016. (ECF No. 1.) Plaintiffs brought claims for breach of contract (Count One) and unfair and deceptive practices in violation of the Connecticut Unfair Insurance Practices Act, Conn. Gen. Stat. § 38a–816 *et seq.* ("CUIPA") and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42–110a *et seq.* ("CUTPA") (Count Two). (ECF No. 23.) USAA has moved for summary judgment on the breach of contract claim, arguing that the insurance policy at issue did not cover the alleged damage. It also argues that it cannot be held liable under CUIPA/CUTPA because there was no breach of contract, or, in the alternative, because its liability was not reasonably clear. (ECF No. 49.) For the reasons set forth below, the defendant's motion for summary judgment is granted with respect to the plaintiffs' CUTPA claim but denied with respect to the plaintiffs' breach of contract claim.

**I.    Factual Background**

The following facts, which are taken from the parties' Local Rule 56(a) Statements and the exhibits, are undisputed unless otherwise indicated.

### A. Damage to the Plaintiffs' Home

The plaintiffs bought their home in Tolland, Connecticut, in June of 2010. (ECF No. 51, Defendant's Local Rule 56(a)1 Statement ("Def.'s L.R. 56(a)1 Stmt.") at ¶ 1; ECF No. 56-1, Plaintiffs' Local Rule 56(a)2 Statement ("Pl.'s L.R. 56(a)2 Stmt.") at ¶ 1.) The home was built in 1985. (Def.'s L.R. 56(a)1 Stmt. at ¶ 2; Pl.'s L.R. 56(a)2 Stmt. at ¶ 2.) Since 2010, USAA has provided the plaintiffs with homeowners' insurance for the property, under consecutive policies, each providing coverage for one year. (Def.'s L.R. 56(a)1 Stmt. at ¶ 3; Pl.'s L.R. 56(a)2 Stmt. at ¶ 3.)

In December 2015, Mr. Sirois noticed a crack in the basement walls of his home. (Def.'s L.R. 56(a)1 Stmt. at ¶¶ 4-5; Pl.'s L.R. 56(a)2 Stmt. at ¶¶ 4-5.) Mr. Sirois noted that the crack "didn't seem concerning" at the time and that "there was nothing that would indicate that something further had to be done." (Def.'s L.R. 56(a)1 Stmt. at ¶ 5; Pl.'s L.R. 56(a)2 Stmt. at ¶ 5.) In April 2016, however, Mr. Sirois read an article about the defective concrete problem affecting homeowners in Connecticut, and, after doing so, asked an inspector, Dean Soucy, to inspect the Property. (Def.'s L.R. 56(a)1 Stmt. at ¶ 6; Pl.'s L.R. 56(a)2 Stmt. at ¶ 6.) The inspector pointed out "a variety of faults [and] cracks" in the foundation walls to Mr. Sirois. (Def.'s L.R. 56(a)1 Stmt. at ¶ 7; Pl.'s L.R. 56(a)2 Stmt. at ¶ 7.) Mr. Sirois then pointed out the cracks to Ms. Sirois. Ms. Sirois had not previously noticed any cracks in the foundation walls. (Def.'s L.R. 56(a)1 Stmt. at ¶ 8; Pl.'s L.R. 56(a)2 Stmt. at ¶ 8.) On April 16, 2016, the plaintiffs submitted a claim for coverage to USAA. (Def.'s L.R. 56(a)1 Stmt. at ¶ 9; Pl.'s L.R. 56(a)2

Stmt. at ¶ 9.) Following investigation of the claim, USAA denied the claim by letter dated June 1, 2016. (Def.'s L.R. 56(a)1 Stmt. at ¶ 10; Pl.'s L.R. 56(a)2 Stmt. at ¶ 10.)

    B. **USAA's Policies**

        **i. 2010-2014 Policies**

The 2010-2014 policies provide the following the following "Additional Coverage" for "collapse":

> 8. "Collapse". For an entire building or any part of a building covered by this insurance we insure for direct physical loss to covered property involving "collapse" of a building or any part of a building only when the "collapse" is caused by one or more of the following:
>
> a. "Named peril(s)" apply to covered buildings and personal property for loss insured by this additional coverage.
>
> b. Decay that is hidden from view, meaning damage that is unknown prior to "collapse" or that does not result from a failure to reasonably maintain the property;
>
> c. Insect or vermin damage that is hidden from view . . .
>
> . . .
>
> f. Use of defective material or methods in construction, remodeling or renovation if the "collapse" occurs during the course of the construction, remodeling or renovation.
>
> Loss to an awning… foundation, retaining wall… or dock is not included under items b., c.., d., e. and f. unless the loss is a direct result of the "collapse" of a building.

((Def.'s L.R. 56(a)1 Stmt. at ¶ 12; Pl.'s L.R. 56(a)2 Stmt. at ¶ 12; ECF No. 50-1 at 11)

The 2010-2014 policies contain the following definition of "collapse":

> "**Collapse**" means:
>
> a. A sudden falling or caving in;
> b. A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

3

> Damage consisting solely of settling, cracking, shrinking, bulging or expansion is not covered by this additional insurance unless it is the direct result of "**collapse**".

(ECF No. 50-1 at 11 (2010-2011 policy), 92 (2011-2012 policy), 154 (2012-2013 policy), 210 (2013-2014 policy).)

### ii. 2014-2016 Policies

The 2014-2016 policies contain somewhat different language. The definition of "collapse" in the 2014-2016 policies drops the last sentence excluding damage consisting "solely" of "settling, cracking, bulging or expansion." The new definition provides simply as follows:

> "**Collapse**" means:
>
> a. A sudden falling or caving in; or
> b. A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

(ECF No. 50-1 at 268 (2014-2015 policy), 374 (2015-2016 policy), 439 (2016-2017 policy).)[1]

The 2014-2016 policies also contain the following exclusion:

> 1. . . . [W]e do not insure for damage consisting of or caused directly or indirectly by any of the following, regardless of:
>    (i)   The cause of the excluded event or damage that; or
>    (ii)  Other causes of the loss that; or
>    (iii) Whether the event or damage occurs suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these [two]; or
>    (iv)  Whether other causes or events act concurrently or in any sequence with the excluded event to
>
>    produce the loss.

---

[1] The 2014-2016 policies also include another change to the coverage for "collapse," replacing subpart (f) of the former coverage—which provided coverage for "collapse" caused by "[u]se of defective material or methods in construction, remodeling or renovation if the 'collapse' occurs during the course of the construction, remodeling or renovation"—with the following sentence: "Use of defective materials or methods in construction, remodeling or renovation." (*See* ECF No. 50-1 at 271 (2014-2015 policy); 377 (2015-2016 policy), 442 (2016-2017 policy).)

4

> . . .
>
> f.   . . . deterioration;
>
> . . .
>
> h.   . . . rust, electrolysis or other corrosion;
>
> . . .
>
> k.   Settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

(ECF No. 50-1 at 304-05 (2014 policy), 354-55 (2015 policy), 419-20 (2016 policy).) The 2014-2016 policies contain an endorsement expressly applying these exclusions to the collapse coverage provisions of the policy. (*See* ECF No. 50-1 at 269 (2014 policy includes the following endorsement: "The SECTION I – LOSSES WE DO NOT COVER apply to these coverages unless otherwise stated"), 374 (2015 policy contains the same endorsement), 439 (2016 policy contains the same endorsement).)[2]

### C. Plaintiffs' Complaint

In their amended complaint, the plaintiffs allege that "[t]he condition of the plaintiffs' basement walls constitutes a collapse as defined by the homeowners' policies issued by the defendant" and that "[t]he grounds offered by the defendant for the denial of coverage are contrary to the express provisions of the Homeowners Policy." (ECF No. 23 ("Complaint") at ¶¶ 25-26.) Based upon these allegations, the plaintiffs set out a claim for breach of contract. (*Id.* at ¶ 27.) The amended complaint also alleges that USAA participates in the Insurance Services Office, Inc. ("ISO"), an organization that collects data about insurance claims and drafts policy provisions.

---

[2] I concluded in my denial of USAA's motion to dismiss that the 2010-2014 policies were ambiguous regarding whether these exclusions applied to the "Additional Coverage" for "collapse." (*See* ECF No. 42 at 11.)

(ECF No. 23 at ¶¶ 32-33.) The plaintiffs allege that, through participation in the ISO, USAA had knowledge of many claims in northeastern Connecticut resulting from similar concrete decay, the strategies other insurers had used to deny such claims, and cases such as *Bacewicz v. NGM Ins. Co.*, No. 3:08-CV-1530 (JCH), in which claimants were awarded judgment against an insurer for concrete decay based on "nearly identical" policy language. (*Id.* at ¶¶ 36-38.) The plaintiffs allege that in its denial letter USAA "gave the insured a knowingly false and misleading reason for the denial of coverage." (*Id.* at ¶ 38.) Further, Plaintiffs allege that USAA is "regularly engaged" in refusing to resolve concrete decay claims in good faith, citing five similar cases in Connecticut Superior Court in which USAA is a defendant. (*Id.* at ¶¶ 41-42.) The plaintiffs allege that these practices constitute a violation of CUIPA resulting in a subsidiary violation of CUTPA. (*Id.* at ¶44.)

## II. Legal Standards

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (internal quotation marks and citations omitted). "In making that determination, a court must view the evidence in the light most favorable to the opposing party." *Id.* (quotation marks omitted). On summary judgment a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the

existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "A party opposing summary judgment cannot defeat the motion by relying on the allegations in [the] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Metsack v. Liberty Mut. Fire Ins. Co.*, No. 3:14-CV-01150 (VLB), 2017 WL 706559, at *4 (D. Conn. Feb. 21, 2017).

### III. Discussion

#### A. Breach of Contract Claim

The proper construction of an insurance policy is a question of law. *R.T. Vanderbilt Co., Inc. v. Hartford Accident & Indemnity Co.*, 171 Conn. App. 61, 93 (2017). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract." *Connecticut Medical Ins. Co. v. Kulikowski,* 286 Conn. 1, 5 (2008) (citation and quotation marks omitted).

> If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning…. When interpreting an insurance policy, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result…. As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy.

*Id.* at 5-6 (citations, quotation marks, and alterations omitted). "The insured bears the burden of establishing coverage." *Harleysville Worcester Ins. Co. v. Paramount Concrete, Inc.*, 10 F. Supp. 3d 252, 259 (D. Conn. 2014). "The burden of proving that an exclusion applies is on the insurer, but the insured has the burden of proving that an exception to an exclusion reinstates coverage." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 788 n.24 (2013).

The parties' dispute over the plaintiffs' breach of contract claim focuses on the language of the policies. The plaintiffs argue they are entitled to relief under both the pre-2014 and post-2014 versions of the Policy—or at least that there are factual disputes that preclude summary judgment. (*See* ECF No. 56 at 4.) For the reasons that follow, I conclude there is a genuine dispute of material fact concerning whether the plaintiffs' claimed losses fall within the coverage of both sets of policies.[3]

### 1. The Definition of "Collapse" in the 2010-2014 Policies

As noted above, the 2010-2014 policies define "Collapse" as follows:

"**Collapse**" means:

a. A sudden falling or caving in;
b. A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

Damage consisting solely of settling, cracking, shrinking, bulging or expansion is not covered by this additional insurance unless it is the direct result of "**collapse**".

(ECF No. 50-1 at 11 (2010-2011 policy), 92 (2011-2012 policy), 154 (2012-2013 policy), 210 (2013-2014 policy).) The plaintiffs argue that their claims for coverage fall within the ambit of

---

[3] As a result of this disposition, I do not address the plaintiffs' argument that the Court should use the "continuous injury trigger" theory to decide which policy or policies apply. (*See* ECF No. 56 at 15.)

8

this provision. (*See* ECF No. 56 at 8.) In particular, they contend that the damage to their home constitutes a "caving in" under the policy; they cite a dictionary definition in support of this contention defining "cave in" as "yield" or to "submit to pressure." (*Id.* at 8 (citing Oxford American Dictionary and Thesaurus (2003).) For the following reasons, I conclude that the plaintiffs' definition of "caving in," which is otherwise undefined in the policies, presents a reasonable interpretation of the term.

As an initial matter, the plaintiffs' usage of a dictionary to interpret the term "caving in" is appropriate. *See Buell Indus., Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 539 (2002) ("We are assisted in our interpretation of the term [in an insurance policy] by reference to the dictionary. To ascertain the commonly approved usage of a word, it is appropriate to look to the dictionary definition of the term . . . ." (internal quotation marks omitted)). USAA contests this definition, claiming that the plaintiffs' definition "is inapposite, referring to, a colloquial definition of 'cave in' . . . ." (ECF No. 59 at 4.) But I need not resort to a battle of the dictionaries to resolve the parties' dispute. As noted above, "a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." *See Connecticut Medical Ins. Co.*, 286 Conn. at 6 (internal quotation marks omitted). Here, the term "caving in" is ambiguous, because both parties' interpretations are reasonable. If USAA wished to limit "caving in" to the alternative definition it urges, it could have put such a limitation in the policy. *See Beach v. Middlesex Mut. Assur. Co.*, 205 Conn. 246, 251 (1987) ("If the defendant wished to rely on a single facial meaning of the term 'collapse' as used in its policy, it had the opportunity expressly to define the term to

provide for the limited usage it now claims to have intended. As presently drafted, 'collapse' is not on its face unambiguous." (internal citation omitted).)[4]

USAA argues that the plaintiffs' definition cannot stand because subparts "a" and "b" of the definition of collapse must be "construed as a whole, in harmony with each other." (*See* ECF No. 50 at 13; ECF No. 58 at 4.) In particular, it contends that there would be no need for subpart "b"—and in particular its requirement for a "sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use"—if a minor "breaking apart or deformation" could be construed to constitute a "caving in" under subpart "a." (ECF No. 50 at 14.) USAA's interpretation is reasonable but not required. Not every crack necessarily involves a "yielding to pressure." There could be a "sudden breaking apart or deformation" such that the building is in "imminent peril" of submitting to pressure or yielding such that the building is not fit for its intended use. For example, a crack in the ceiling of a room would not necessarily involve a submitting to pressure or yielding but could render the room in imminent danger of such. Thus, USAA's argument merely stacks one ambiguity upon another.[5]

---

[4] It is worth noting that one of the definitions of "cave in" cited by USAA defines the term as "collapse" (*see* ECF No. 59 at 4 (citing Webster's New World College Dictionary (3rd 3d. 1997))), which the Connecticut Supreme Court has found—in the absence of clearer definition—to mean a "substantial impairment to structural integrity." *See Beach*, 205 Conn. at 251. The plaintiff have alleged such a "substantial impairment to [the] structural integrity" of their home, (ECF No. 23 at ¶¶ 13-14, 19-21), and their expert has provided evidence to support that allegation. (ECF No. 56-5, Deposition of David Grandpre ("Grandpre Depo.") at 47-48, 62-63.)

[5] USAA also argues that I sided with it on this argument in my ruling on its motion to dismiss, when I stated in a footnote that "treating . . . gradually occurring decay as a 'caving in' appears at odds with the pairing of 'caving in; and 'imminent peril' in the second clause of the 'collapse definition.'" (ECF No. 50 at 11 (quoting ECF No. 42 at 14 n. 2).) In that same footnote, however, I noted that "when reasonable inferences are drawn in favor of Plaintiffs, Plaintiffs plausibly allege that their home experienced gradual decay and that, at some point, some small part it unexpectedly 'caved in,' or 'yielded to pressure'—an event that could have occurred in a short time." (*Id.*) In any event, my remarks in the footnote were dicta—indeed, I

USAA also argues that the plaintiffs' proposed definition of "caving in" would render the exclusion for "settling, cracking, shrinking, bulging, or expansion" in the definition of "collapse" meaningless. (ECF No. 59 at 5.) "Under plaintiffs' reading of 'caving in,'" USAA avers, "nearly *every* instance of cracking or bulging . . . would be a 'caving in' of the foundation." (*Id.*) Even this statement admits, however, that there could be incidents of cracking or bulging that did not constitute a "caving in" under plaintiffs' definition. Thus, the language USAA cites would not be rendered meaningless; indeed, that language recognizes that some instances of pure "cracking"— those resulting from a "caving in"—will be covered, while others will not be. Further, the extent to which any incident of settling, bulging, or cracking of walls constitutes a yielding or submitting to pressure is a question of fact in each individual case. USAA may not merely assert that any incident of settling, bulging, or cracking constitutes a yielding or submitting to pressure.

Finally, USAA cites a plethora of cases precluding coverage in cases with similar facts to the one at bar; all of these cases, however, concern insurance policies containing definitions of "collapse" that differ from the one here. (*See* ECF No. 50 at 15-16 (citing *Liston-Smith v. CSAA Fire & Cas. Ins. Co.*, 287 F. Supp. 3d 153, 157 (D. Conn. 2017) (construing insurance policy defining "collapse" as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose"); *Zamichiei v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-CV-739 (VAB), 2018 WL 950116, at *2 (D. Conn. Feb. 20, 2018) (same); *Makufka v. CSAA Fire & Cas. Ins. Co.*, 304 F. Supp. 3d 275, 279 (D. Conn. 2018) (same); *Jemiola v. Hartford Cas. Ins. Co.*, No. CV-15-6008837-S, 2017 WL 1258778, at *5 (Conn. Super. Ct. Mar. 2, 2017) (same); *Hurlburt v. Massachusetts Homeland*

---

noted that the two definitions merely "appear[ed] at odds"—and, addressed only subpart "b" of the definition of "collapse."

*Ins. Co.*, 310 F. Supp. 3d 333, 336 (D. Conn. 2018) (same); *see* ECF No. 59 at 6 (citing *Carlson v. Allstate Ins. Co.*, No. 3:15-CV-01045 (MPS), 2017 WL 4285687, at *3 (D. Conn. Sept. 27, 2017) (construing insurance policy noting that "[f]or coverage to apply, the collapse of a building structure . . . must be a sudden and accidental direct physical loss . . . ."); *Agosti v. Merrimack Mut. Fire Ins. Co.*, 279 F. Supp. 3d 370, 373 (D. Conn. 2017) (same); *Kim v. State Farm Fire & Cas. Co.*, 262 F. Supp. 3d 1, 8 (D. Conn. 2017) (construing insurance policy not providing coverage for collapse but excluding coverage for "settling, cracking, shrinking, bulging, or expansion of . . . walls").) Given that they construed differently worded insurance policies, these cases are inapplicable here.

### 2. The Definition of "Collapse" in the 2014-2016 Policies

As noted above, the 2014-2016 policies define "Collapse" as follows:

"**Collapse**" means:

a. A sudden falling or caving in;
b. A sudden breaking apart or deformation such that the building or part of a building is in imminent peril of falling or caving in and is not fit for its intended use.

(ECF No. 50-1 at 268 (2014-2015 policy), 374 (2015-2016 policy), 439 (2016-2017 policy).) Most of my analysis above applies to the definition of "collapse" in the 2014-2016 policies. Thus, the term "caving in" within these provisions is ambiguous.

USAA contends that the 2014-2016 policies separately preclude coverage because the exclusions they contain "for loss caused by deterioration, cracking, bulging, etc., and for loss caused by a faulty or defective material (concrete) are plainly applicable to the 'Collapse' coverage." (ECF No. 50 at 23.) As noted above, the policy exclusions USAA cites state, in relevant part, as follows:

12

> 2. . . . [W]e do not insure for damage consisting of or caused directly or indirectly by any of the following, regardless of:
>    - (v) The cause of the excluded event or damage that; or
>    - (vi) Other causes of the loss that; or
>    - (vii) Whether the event or damage occurs suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these [two]; or
>    - (viii) Whether other causes or events act concurrently or in any sequence with the excluded event to
>
>    produce the loss.
>
>    . . .
>
>    f. . . . deterioration;
>
>    . . .
>
>    h. . . . rust, electrolysis or other corrosion;
>
>    . . .
>
>    k. Settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

(ECF No. 50-1 at 304-05 (2014 policy), 354-55 (2015 policy), 419-20 (2016 policy).) If this provision were interpreted to preclude coverage for *all* damage consisting or resulting from cracking, shrinking, and bulging, however, it would contradict the "collapse" provision. For example, if cracking caused a "falling in," it would constitute a covered "collapse" under the policy *and fall within the exclusion noted above*. USAA offers an interpretation of the policies that it contends harmonizes these provisions, averring that "[the provisions] essentially mean that if a loss caused by [damage of a type noted in the exclusion above] is not a 'collapse,' as defined in the policy, then it may be subject to the [exclusions listed above]." (ECF No. 59 at 12.) That interpretation does not help USAA, however, because the plaintiffs have identified a genuine issue of material fact concerning whether the damage to their property—i.e., the settling,

13

cracking, and bulging of the concrete in their foundation walls—constitutes a "collapse" under the policies. As such, they have presented a genuine issue of material fact concerning whether their losses are covered under the post-2014 policies under USAA's proffered interpretation of the policy exclusion.

USAA cites several cases in support of the conclusion that "this Court and other courts in this district, in defective concrete cases, have consistently enforced exclusions for cracking, deterioration and corrosion absent a covered 'collapse.'" (ECF No. 59 at 12 n. 11.) The cases USAA cites, however, concerned an exclusion for cracking *within the definition of "collapse,"* as opposed to the general "cracking" exclusion on which USAA relies in the 2014-2016 policies. *See England v. Amica Mut. Ins. Co.*, No. 3:16-CV-1951 (MPS), 2017 WL 3996394, at *8 (D. Conn. Sept. 11, 2017) (interpreting definition of collapse noting that "Additional Coverage" for collapse did "not apply to: . . . (3) A building or any part of a building that is standing, *even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion*" (emphasis added)); *Carlson v. Allstate Ins. Co.*, No. 3:15-CV-01045 (MPS), 2017 WL 4285687, at *2 (D. Conn. Sept. 27, 2017) (interpreting definition of collapse including proviso that "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion"); *Agosti*, 279 F. Supp. at 373 (same).[6] The specific trumps the general and, thus, if there is a "collapse," even one that manifests itself only in "cracking," there is coverage. *See* § 32:10.Specific and general words; the Ejusdem Generis Doctrine, 11 Williston on Contracts § 32:10 (4th ed.) ("When general and specific clauses conflict, the specific clause governs the meaning of the contract.").

---

[6] USAA also cites *Kim* in favor of this proposition. (*See* ECF No. 59 at 13.) *Kim*, however, concerned a policy that contained a general exclusion for "cracking" without any specific coverage for "collapse." *Kim*, 262 F. Supp. 3d at 8. As such, it is inapposite here.

14

### 3. Application to the Plaintiffs' Losses

I now turn to whether the evidence in the record shows that the plaintiffs' losses could fall within their proposed definition of "caving in," and conclude that it does. The plaintiffs' expert, David Grandpre, repeatedly described the damage to the plaintiffs' home in terms of the submission to pressure and yielding of the concrete and the walls generally. (*See* ECF No. 56-6, Affidavit of David Grandpre ("Grandpre Aff.") at ¶ 23 ("The map pattern cracking is a failure mechanism which indicate[s] that the original concrete basement walls had yielded and succumbed to the internal pressure exerted by the expansion of the reactive aggregate."); ECF No. 56-4, Report of David Grandpre ("Grandpre Report") at 3 ("The concrete used at the Sirois residence contained a compound, most likely within the aggregate, which was subjected to a chemical reaction. As the chemical reaction took place, a chemical compound larger than the original elements formed, resulting in internal expansion that caused the concrete to fracture and expand . . . . [T]his expansion causes the concrete to fracture internally."); Grandpre Depo. at 57 ("It's an iterative process. So there is [a] chemical reaction that takes place when the aggregate gets wet, and the byproduct, which is the increase in volume, pushes against the concrete until a moment where it exceeds the tensile strength of the concrete and then there's a release, and you have a crack created, and then it repeats again and again.").)[7]

Further, Grandpre described the damage to plaintiffs' home as a "substantial impairment to the structural integrity" of the property. (*See* Grandpre Depo. at 47-48.) In setting out this description, Grandpre distinguished between homes with mere "cracking" damage and those

---

[7] USAA filed a motion to preclude the testimony of Grandpre attesting to "when [the] 'substantial impairment of structural integrity'" occurred at the plaintiffs' home. (*See* ECF No. 60 at 1.) Since the portions of Grandpre's testimony I cite do not touch upon this issue, I need not address USAA's motion here.

where the cracking had caused a "substantial impairment to the structural integrity" of the property. He noted that, for example, a property containing "only . . . a small area of cracking" did not contain a "substantial impairment." (*Id.* at 62-63.) This further underscores the fact that there can be "cracking" that does not rise to the level of a "collapse" under the policy. Thus, the plaintiffs have identified a genuine dispute of material fact regarding whether their home was subject to a "caving in" that fell within the ambit of the "collapse" coverage in USAA's policies.

For these reasons, I deny USAA's motion for summary judgment with respect to the plaintiffs' breach of contract claim.

**B.      CUTPA Claim**

USAA contends that the plaintiffs' CUTPA claim fails for two reasons: (1) the alleged failure of the plaintiffs' breach of contract claim; and (2) the issues of law and fact regarding the plaintiffs' breach of contract claim are not "so clear-cut that USAA's liability was reasonably clear" such as to trigger CUTPA liability. (ECF No. 50 at 23-24 (internal quotation marks omitted).) The first of these grounds fails because I have concluded that the plaintiffs' breach of contract claim remains. USAA's second argument, however, presents a more complex question.

To set out a CUTPA claim based upon a violation of CUIPA, "a plaintiff must show that the defendant engaged in an act prohibited by CUIPA's substantive provisions, and that the act proximately caused the harm alleged." *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 165 (D. Conn. 2014). The plaintiffs cite CUIPA's prohibition against unfair settlement practices in their CUTPA claim. (*See* Complaint at ¶ 43 (averring that USAA engaged in conduct that violated Conn. Gen. Stat. § 38a-816(6)(F)).) To set out a claim under this provision, a plaintiff must "allege that the defendant has committed the alleged proscribed act with sufficient frequency to indicate a general business practice." *Belz*, 46 F. Supp. 3d at 165. Such practices include "not

16

attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Conn. Gen. Stat. § 38a-816(6)(F). USAA contends that the plaintiffs have failed to meet this standard. For the reasons set forth below, I agree.

The plaintiffs' failure to cite any cases explicitly rejecting USAA's position on coverage dooms their argument that USAA denied a claim for which "liability [was] reasonably clear." While the plaintiffs identify other lawsuits against USAA (*see* Complaint at ¶ 42), they do not identify any apposite final judgments stating that the policy language upon which USAA relied in denying the plaintiffs' coverage claim provided for liability under the policy.[8] Given that the plaintiffs do not present any other evidence that USAA should have known that liability was clear under the policies, this failure undermines their claim. *See Roberts*, 264 F. Supp. 3d at 416 (concluding plaintiffs' identification of several other lawsuits against insurer—including rulings denying summary judgment in insurers' favor—did not provide enough support for contention that insurer's "liability was reasonably clear" to support CUTPA liability under unfair claims settlement practices provision of CUIPA); *Kowalyshyn v. Excelsior Ins. Co.*, No. 3:16-CV-00148

---

[8] The plaintiffs cite a single case from this district as an example of a case "where the plaintiffs were awarded judgment against the insurer on a concrete decay claim based on policy language nearly identical to that in the plaintiffs' policy." (*See* Complaint at ¶ 37 (citing *Bacewicz v. NGM Insurance*, Connecticut Federal District Court Civil Action No. 3:08-CV-01530 (JCH)).) The *Bacewicz* case, however, concerned an insurance policy which included no definition of the term "collapse." *See Bacewicz v. NGM Ins. Co.*, No. 3:08-CV-1530 (JCH), 2010 WL 3023882, at *3 (D. Conn. Aug. 2, 2010) (noting insurance policy provided coverage "for direct physical loss to covered property involving the collapse of a building or any part of a building caused by [various conditions]"). That is not the case here. Further, *Bacewicz* consisted of a partial denial of an insurer's motion for summary judgment. It did not constitute the sort of finding of liability that would have rendered USAA's liability under the policy "reasonably clear." *See Roberts v. Liberty Mut. Fire Ins. Co.*, 264 F. Supp. 3d 394, 416 (D. Conn. 2017) ("A district court's denial of summary judgment does not make liability reasonably clear . . . ." (internal quotation marks omitted)).

(JAM), 2018 WL 888724, at *7 (D. Conn. Feb. 13, 2018) (same); *Gabriel v. Liberty Mut. Fire Ins. Co.*, No. 3:14-CV-01435-VAB, 2017 WL 6731713, at *10 (D. Conn. Dec. 29, 2017) (same).

The plaintiffs do not contest this claim in their objection but rather argue that *Roberts* was wrongly decided. (ECF No. 56 at 26.) In support of this contention, they cite a footnote in a different case from this district. (*See id.* (citing *Tucker v. Am. Int'l Grp., Inc.,* No. 3:09-CV-1499 CSH, 2015 WL 403195, at *27 n. 48 (D. Conn. Jan. 28, 2015).) The footnote cited by the plaintiffs states that "[w]ith respect to unfair insurance practices statutes, as one commentator opined, the requirement that the insurer settle when the insured's liability is reasonably clear means that the existence of liability has to be substantially certain." *Tucker*, 2015 WL 403195 at *27 n. 48 (internal quotation marks and alterations omitted). The plaintiffs' argument ventures further afield, however, as it then cites a Massachusetts district court case cited by *Tucker* in support of this statement. *See id.* (citing *Bohn v. Vermont Mut. Ins.*, 922 F. Supp. 2d 138, 146-47 (D. Mass. 2013) (holding under similar Massachusetts law that "[l]iability is reasonably clear if a reasonable person, with knowledge of the relevant facts and law, would probably have concluded that the insurer was liable to the plaintiff"). The plaintiffs' citation does not help their case, because the plaintiffs have failed to satisfy even the standard employed by the *Bohn* court. They have failed to present evidence that a reasonable person, "with knowledge of the relevant facts and law, would probably have concluded that the insurer was liable." Indeed, as shown in the discussion of the breach of contract claim, the policy language is ambiguous in key respects, and it is thus a jump ball as to whether "the insurer [is] liable." There is no evidence in the record suggesting that USAA's liability under the policies was obvious.

I therefore grant USAA summary judgment on the plaintiffs' CUTPA claim.

IV. Conclusion

For the reasons set forth above, the defendant's motion for summary judgment (ECF No. 49) is granted in part and denied in part. It is granted with respect to the plaintiffs' CUTPA claim but denied with respect to the plaintiffs' breach of contract claim.

IT IS SO ORDERED.

                                                   /s/
                                    Michael P. Shea, U.S.D.J.

Dated:       Hartford, Connecticut
               September 18, 2018